**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ingo GRILL, Defendant-Appellant.**

**No. 72-3042.**

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1973.

Max B. Kogen, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Barbara E. Vicevich, Harold F. Keefe, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

The sole issue is whether the District Court correctly refused to suppress evidence claimed to have been obtained in violation of the Fourth Amendment. We hold that the court did not err and affirm appellant's conviction on a charge of conspiracy to import cocaine.

Appellant Grill was validly arrested by federal officers on June 13, 1972, as he was about to board a commercial plane in Palm Beach, Florida, for New York. His baggage, which was already aboard the plane, was taken off and sent to the customs office. The same day appellant was taken to the county jail to be held as a federal prisoner. He was given a strip search. Pursuant to jail procedure the personal belongings on his person, including a loose single key, were turned over to the jailer who listed them on a printed receipt form which the jailer and appellant signed. The form states that the prisoner is given a copy which he is to submit when released, and it contains a place for the prisoner to sign upon release acknowledging that the listed property has been returned to him.

The key was sealed in an envelope, whether alone or with other items is unclear, and all of appellant's property was placed in a pouch containing only his property, and the pouch was locked in a vault. Obviously these procedures were rational, in fact necessary, for protection of the prisoner and jail officials as well.[1]

---

1. Among other property listed and locked away was more than $4,000 in cash.

As a result of information given by Grill's confederate, customs officers located on Bimini Island, Bahamas, a duffle bag said by the confederate to contain cocaine and to have been left there by appellant to be brought later to the United States. The bag was secured by a small brass lock. The confederate warned that it contained an explosive device, and the warning proved to be correct. Officers deactivated the device when they found the bag.

On July 12, a month after Grill's arrest, a federal agent went to the jail, bringing the lock with him, to determine if Grill's stored personal effects included a key that would fit the lock. He neither obtained nor sought a search warrant but merely asked the officer in charge of the jail if he could look at Grill's property in the custody of the jail, and the officer produced and laid out the property. The agent saw the key, inserted it into the lock and found that it would open the lock. With the consent of the officer he took possession of the key and gave a receipt for it.

■ The appellant relies upon Brett v. United States, 412 F.2d 401 (CA5, 1969), in which we held that the fact that police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute an exception to the requirement of a search warrant, and that the single fact of police custody is not a surrender by the prisoner of his expectations of privacy. In Brett the officer conducted an exploratory search by going through the prisoner's effects and was able to turn up in the watch pocket of his trousers cellophane papers found to have on them traces of heroin. Grill's situation does not, however, fall within Brett but within cases which we considered and distinguished in the Brett opinion. In Evalt v. United States, 382 F.2d 424 (CA9, 1969), at the time of appellant's arrest a state officer had validly searched defendant's packsack, finding what was thought to be stolen money, and had validly seized the packsack and contents. Subsequently, a federal agent went through the packsack and compared serial numbers on the money with those of money reportedly stolen from the bank, and this was held to be valid. Westover v. United States, 394 F.2d 164 (CA9, 1968), had held that the police could look again at the serial numbers on currency which had been validly taken from the prisoner's pocket at the time of arrest and subsequently placed in the prisoners' property room. The underpinning of these cases is that the items in question have been exposed to police view under unobjectionable circumstances, so that no reasonable expectation of privacy is breached by an officer's taking a second look at matter with respect to which expectation of privacy already has been at least partially dissipated.

■ The other search was of Grill's suitcase. On June 21 the Internal Revenue Service filed a lien on Grill's property and served it on the Bureau of Narcotics agent handling the case. The agent picked up the suitcase, which until then had remained in the customs office at the airport, to place it in storage in a bonded warehouse for safekeeping. Prior to putting it in storage and pursuant to a recommended procedure, he examined the contents of the suitcase for two purposes: to make an inventory of the contents and to see if it contained explosive devices or other materials that might pose a danger to the warehouse or other stored items. In the process the agent discovered and seized hotel receipts and an airline ticket which tended to substantiate the testimony of the confederate concerning Grill's presence in South America for the purpose of buying cocaine. Warrantless examination of the suitcase contents was not a violation of the Fourth Amendment. United States v. Lipscomb, 435 F.2d 795 (CA5, 1970), cert. denied, 401 U.S. 980, 91 S. Ct. 1213, 28 L.Ed.2d 331 (1971); United States v. Boyd, 436 F.2d 1203 (CA5, 1971); United States v. Edwards, 441 F.2d 749 (CA5, 1971).

The so-called "inventory searches" can, of course, be employed as subter-

fuges and can be the subject of abuse. It is temptingly simplistic to employ the phrase "inventory" as though uttering it solves everything, and all too easy to state overbroadly the interests which "inventory searches" vindicate, and to automatically give to those interests a primacy which, in the balance between public and private interest, they do not necessarily enjoy. Having said that, we conclude that in this case there is no evidence of overreaching done in the name of inventory which would cause us to doubt the result we reach.

Affirmed.