132 N.J. Super. 256 (1975)
333 A.2d 304
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
WALLACE ADAMS, DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
Decided January 21, 1975.
*257 Mr. Stanley C. Van Ness, Public Defender, attorney for defendant (Mr. Richard S. Lehrich, First Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Karl Asch, Union County Prosecutor, attorney for the State of New Jersey (Mr. J. Michael Evans, Assistant Prosecutor, of counsel).
McGRATH, J.C.C., Temporarily Assigned.
This is a motion to suppress evidence seized from defendant incident to his arrest on a disorderly person's charge in the early hours of February 13, 1974.
Defendant and a companion were detained by members of the Elizabeth Police Department after admitting that they had not paid their bill at 400 Diner earlier in the evening, as reported to the police. The officers returned to the diner with the two men, where a woman identified them as the subjects of the report and agreed to sign a complaint. The men were then arrested, patted down and transported to headquarters. After being booked on charges of failure to pay a restaurant bill, N.J.S.A. 2A:170-47, Officer Richard Pelesko, one of the arresting officers, testified that it was the responsibility of the desk sergeant to take defendant's belongings and hold them until his release.
Another report was received that night from Miss Melinda Jones that she had been robbed of her purse at the Penn Central Station about 11 P.M., February 12. On the morning of the 13th, Detective James O'Connell called Miss Jones to headquarters for questioning about the robbery. After she described the items contained in the stolen purse, including a Bahamian 50-cent piece, the detective testified *258 that he asked her to step into the courtroom to determine whether she could identify anyone there as her assailant. Approximately 75 people were in court and after five or ten minutes the detective joined her. She identified defendant in the prisoner's dock where he was awaiting arraignment on the disorderly charge.
On their way back to Detective O'Connell's desk to file a complaint for the robbery he suggested that they examine the contents of defendant's property box for any evidence of the robbery. He stated that Miss Jones' reference to the Bahamian coin suggested to him the advisability of checking defendant's property box. He further testified that he did not procure a search warrant because he believed the property was in police custody, making a warrant unnecessary. Miss Jones spotted her ring, with the letters P.E.A.C.E. inscribed, which had been in the stolen purse. The defense characterizes this activity as a warrantless search and seeks to suppress the use of the ring as evidence.
There is no doubt that a search of the person incident to an arrest is reasonable. State v. Doyle, 42 N.J. 334, 343 (1964); Chimel v. California, 395 U.S. 752, 89 S.Ct., 2034, 23 L.Ed.2d 685 (1969). The time lapse from the point of this defendant's arrest to the seizure of his belongings at headquarters does not affect its reasonableness. In State v. Mark, 46 N.J. 262, 278 (1966), the court found no legal significance in the fact that a period of time elapsed from defendant's arrest to the taking of his clothes at the jail for use as evidence. On the contrary, the court found it to be lawful police procedure and indeed preferable to taking the clothes at the scene of the arrest.
There is no evidence in this case that the original seizure of the property was for purposes other than inventory and safekeeping. While that procedure was clearly proper, the issue before this court is whether the subsequent examination of the contents constituted a search which required a warrant.
*259 This question has not been decided in New Jersey although it has been dealt with a number of times in the federal courts. Well reasoned opinions of federal courts, while not binding, are persuasive on the issue of reasonableness of a search and seizure, in the absence of decisions of New Jersey reviewing courts. State v. Chance, 71 N.J. Super. 77, 79 (Cty. Ct. 1961).
This question has not been decided in New Jersey although it has been dealt with a number of times in the federal courts. Well reasoned opinions of federal courts, while not binding, are persuasive on the issue of reasonableness of a search and seizure, in the absence of decisions of New Jersey reviewing courts. State v. Chance, 71 N.J. Super. 77, 79 (Cty. Ct. 1961).
In the recent case of United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Supreme Court considered the reasonableness of the seizure of defendant's clothing for use as evidence while in custody at the city jail, but some ten hours after his arrest when substitutes could be purchased. In reversing the Sixth Circuit Court of Appeals, the court said:
This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon then he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. * * * [I]t is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest. [415 U.S. at 805-806, 94 S.Ct. at 1238, 39 L.Ed.2d at 777]
The court stated the result to be the same as that reached by a number of federal appellate courts upholding the use as evidence of clothing and effects which were seized upon arrival at the jail, held in defendant's name in the property room and searched at a later time, citing Evalt v. U.S. 382 F.2d 424 (9 Cir.1967); Westover v. United States, 394 F.2d 164 (9 Cir.1968), and Baskerville v. United States, *260 227 F.2d 454 (10 Cir.1955). A contrary position was taken by the Fifth Circuit Court of Appeals in Brett v. United States, 412 F.2d 401 (1969), cited by the defense. It should be noted, however, that that court distinguished its holding in the later case of U.S. v. Grill, 484 F.2d 990 (5 Cir.1973), cert. den. 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974).
In that case, when defendant Grill was searched at the county jail where he was to be held as a federal prisoner, his personal belongings, including a loose single key, were turned over to the jailer. The key was sealed in an envelope and all of defendant's property was placed in a pouch and locked in a vault. A month after the arrest a federal agent went to the jail to determine if Grill's stored effects included a key that would fit the lock of a duffel bag said to have been left behind by defendant. The information was obtained from Grill's confederate that the bag contained an explosive device, which later proved to be true. The agent saw the key, inserted it in the lock and took possession of it. The court restated its position in Brett that:
* * * [T]he fact that police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute an exception to the requirement of a search warrant and that the single fact of police custody is not a surrender by the prisoner of his expectations of privacy. [484 F.2d at 991]
However, the facts were compared to those of the Evalt case, supra, in which a later examination of the serial numbers of bills in a knapsack seized at the time of arrest to compare them with those reportedly stolen, and the Westover case, supra, in which a similar comparison was made of currency stored in the prisoner's room where the searches were in each case upheld by the Ninth Circuit Court of Appeals.
The underpinning of all these cases was stated to be that because the items had been exposed to police view under unobjectionable circumstances, no reasonable expectation *261 of privacy was breached by an officer's taking a second look at the items. Grill, supra 484 F.2d at 991.
The rationale is clearly applicable to the facts of this case, for while the items were validly seized at the time of defendant's arrest for an offense other than robbery, the action of the detective and the complainant in no way constituted a further invasion of defendant's expectation of privacy with respect to items readily visible in the box.
This court finds that it was reasonable, in light of the complainant's identification of defendant as her assailant, to allow her to view the items already legally in police custody as a result of his previous arrest. No further warrant was necessary as this act did not constitute an unreasonable search prohibited by the Fourth Amendment of the United States Constitution.
The motion to suppress the evidence so obtained is denied.