STATE OF NORTH CAROLINA v. JOSEPH PHILLIP SMITH AND JOHNNY B. SMITH

No. 41

(Filed 12 January 1982)

Constitutional Law § 32; Criminal Law § 98.3— placement of defendants in hold area—no denial of fair trial

Defendants were not denied a fair and impartial trial in an armed robbery case because they were brought into the courtroom prior to the commencement of the trial and placed in a railed "hold area" in the presence of the prospective jurors, especially where the court instructed the jury that the mere fact that defendants entered the courtroom and were seated in the place reserved for those who are in custody was of no legal consequence whatsoever in the jury's determination of the issues involved and, upon inquiry by the court, all jurors indicated that such fact would not affect them in any way.

DEFENDANTS appeal from judgment of *Brannon, J.*, 1 December 1980 Criminal Session, JOHNSTON Superior Court.

Defendants were tried upon separate bills of indictment, proper in form, charging them with armed robbery on 7 April 1979.

The State's evidence tends to show that Joseph Phillip Smith, Johnny B. Smith and Roscoe Washington traveled together from Goldsboro to Smithfield on 7 April 1979 for the purpose of committing a robbery. Upon arrival in Smithfield, they parked in front of Williams Limited, the clothing store they intended to rob. The three men got out of their car, walked across the street and entered the store. Roscoe Washington walked straight to the back where he and Joseph Smith began looking at some pants. There were two female clerks in the store. Roscoe Washington pulled a gun, which had been furnished to him by Joseph Smith, and forced both clerks to accompany them into a small room in the back of the store. The girls were forced to lie on the floor while a search was made for money. While Roscoe

Washington held the gun on the girls and Johnny Smith was in the front part of the store acting as a lookout, Joseph Smith began the search for money. At that time, the husband of one of the girls entered the store, recognized what was happening, and managed to push the alarm button while waiting for his wife. The three robbers escaped the scene and were arrested sometime later in the Smithfield area.

Pursuant to a plea bargain arrangement, Roscoe Washington testified as a witness for the State, narrating the facts as above set out. The testimony of Kay Wilkins and Donna Ellis, the two employees involved, corroborated Roscoe Washington. In addition, one of the girls testified she saw Joseph Smith take $200 from a file drawer, $5 from Kay's wallet and $25 from Donna's pocketbook. There was other evidence pointing unmistakably to the guilt of defendants.

Defendants offered no evidence before the jury.

At the beginning of the trial, defense counsel approached the bench and moved for a continuance on the ground that his two clients entered the courtroom in the presence of all prospective jurors and were seated in the courtroom in the place usually reserved for those who are in custody. The court denied the motion to continue but advised counsel that a curative instruction would be given to the jurors. Accordingly, the fourteen jurors tentatively selected, including two alternates, were instructed that the mere fact that defendants entered the courtroom and were seated in the place reserved for those who are in custody was of no legal consequence whatsoever in the jury's determination of the issues involved. The presiding judge inquired as to whether the jurors would be affected, and all jurors indicated by their answers that such fact would not affect them in any way.

The place where defendants were seated is described in the record as a spot inside a railing "about three-by-eight or six" with three seats in it. After describing it, the presiding judge said:

> The Court is aware that in every courthouse in North Carolina where the Courts have ever been there was an area referred to as a prisoner's box and that is where folks come in and sit down who are in custody, and those who are on bond sit in the audience section of the courtroom itself, and in that sense this courthouse is like every other courthouse in North Carolina and indeed in any other state that the Court has ever seen photographs of a courtroom, but be that

as it may the Court believes that was inquired into and covered with the prospective jurors. . . . [D]efendants did come down and sit in it in the presence of the jurors; however, nothing was done at that time to single them out nor identify them nor the like.

Defendants were convicted of armed robbery as charged and each was sentenced to life imprisonment to run at the expiration of a life term received by each of them in Cumberland County in an unrelated case.

*Rufus L. Edmisten, Attorney General, by Charles J. Murray, Special Deputy Attorney General, for the State.*

*Louis Jordan, for defendant appellants.*

HUSKINS, Justice.

Defendants contend they were denied a fair and impartial trial when they were brought into the courtroom prior to the commencement of the trial and placed in a "hold area" in the presence of the prospective jurors. This constitutes their first and only assignment of error.

Defendants' argument is based upon the unsupported assumption that being seated within a section of the courtroom measuring approximately three-by-eight or six feet surrounded by a railing is tantamount to being shackled. There is no contention that the railing was anything other than the type of railing normally used to separate the bar from the spectators. Moreover, there is no evidence, and there seems to be no contention, that defendants were subjected to any unusual security measures. To the contrary, the trial judge characterized the courtroom as similar to every other courthouse in North Carolina. Furthermore, in response to the trial court's interrogation, the jurors all indicated they were totally unaffected by the location of the defendants in the courtroom.

We find no support in law or logic for the contention advanced by defendants. There is nothing in this record to support the argument that being seated where those in custody are ordinarily seated was tantamount to being shackled. Defendants made no attempt to establish any prejudice. The trial court satisfied itself that no prejudice had resulted. The jurors themselves said they had not been, and would not be, prejudiced by the mere fact that they had seen defendants seated within the railed area customari-

ly used for those in custody awaiting trial. This assignment is overruled without further discussion.

Defendants initially assigned as error the ruling of the trial court denying their motion to dismiss at the close of the State's evidence. However, they make no argument and cite no authority on the question posed, and therefore the assignment is deemed abandoned. Rule 28(a), Rules of Appellate Procedure. Even so, they have requested this Court to "review the record to determine if there are matters of record which will reflect that a dismissal was appropriate." In view of the seriousness of the crime of armed robbery and the severity of the punishment it ordinarily demands, we have reviewed the record proper which, in criminal cases, ordinarily consists of (1) the organization of the court, (2) the charge contained in the information, warrant or indictment, (3) the arraignment and plea, (4) the verdict and (5) the judgment. *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976); *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. Tinsley*, 279 N.C. 482, 183 S.E. 2d 669 (1971). We find that the court was properly organized, the indictments are proper in form, defendants entered pleas of not guilty, the verdicts were properly returned and the judgments are within the statutory limits provided by law on the date these offenses were committed. See former G.S. 14-87 which remained in effect until July 1, 1981 when armed robbery was made a Class D felony punishable as now provided in G.S. 14-1.1. Thus, we find no error on the face of the record proper. Moreover, we note parenthetically that the guilty verdicts are overwhelmingly supported by the evidence.

Prejudicial error not having been shown, the verdicts and judgments must be upheld.

No error.