David YOUNG, Jr., Petitioner, Appellant,

v.

William CALLAHAN, Respondent, Appellee.

No. 82–1722.

United States Court of Appeals, First Circuit.

Argued Jan. 5, 1983.

Decided Feb. 16, 1983.

Robert L. Sheketoff, with whom Kimberly Homan, Norman S. Zalkind, and Zalkind, Zalkind & Sheketoff, Boston, Mass., were on brief, for petitioner, appellant.

Michael B. Roitman, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., Stephen R. Delinsky, Chief, Criminal Bureau, Needham, Mass., and Barbara A.H. Smith, Chief, Criminal Appellate Division, Norwell, Mass., were on brief, for respondent, appellee.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Appellant David Young appeals the dismissal by the district court of his petition for habeas corpus. Of three grounds urged below as warranting habeas relief, only one is pressed on appeal: appellant contends that his Fourteenth Amendment right to due process was violated when, over objection and without inquiry into security needs, he was confined at trial to the prisoner's dock.[1] In earlier cases we have either found resolution unnecessary or that ample justification was present. Here we must decide the question whether the dock without any particular justification can today pass constitutional muster. We conclude that it cannot.

I. *Relevant Facts and Procedural History*

In January of 1979 appellant was tried in Massachusetts Superior Court on one count of assault and battery with a dangerous weapon and two counts of murder. The jury returned a guilty verdict on the assault and battery indictment but was unable to reach a verdict on the two murder indictments. In a new trial in February of 1979, appellant was found guilty of second degree murder on both counts.[2] Those convictions were affirmed by the Massachusetts Supreme Judicial Court in *Commonwealth v. Young,* (1981) 382 Mass. 448, 416 N.E.2d 944 (1981).

Prior to appellant's second trial, counsel moved that he be allowed to sit at counsel table rather than in the prisoner's dock on the grounds that "forcing him to sit in the prisoner's dock would deprive him of his constitutional rights to a fair trial, to the presumption of innocence, to access to counsel, non-suggestive eyewitness identifications, and due process of law." That motion was accompanied by an affidavit from appellant's trial counsel averring, based on his own observations and those of correctional officers during appellant's two years of incarceration and on appellant's conduct at the first trial, that "allowing [appellant] to sit at counsel table will not present any hazards to the orderly judicial process or to the security of its personnel", and that the trial of the case would involve a substantial amount of testimony concerning acts and conduct of the appellant over a several day period and would thus "require consultation with the defendant." Massachusetts law at the time of appellant's trial placed "it ... within the judge's sound discretion whether to grant a defendant's request to sit at counsel table or elsewhere", *Commonwealth v. Moore,* 379 Mass. 106, 109, 393 N.E.2d 904 (1979). In this case the trial court denied appellant's motion without allowing counsel to be heard, in the following colloquy:

"Counsel: I have a motion, your Honor, for the defendant to sit at counsel table. It's a recent one. I had one before and I have a recent one.

The Court: That is all right. That is denied.

Counsel: Denied you said, your Honor?

The Court: Yes.

Counsel: May I be heard?

The Court: Look. We do it routinely. At some time the Supreme Court may

1. The Massachusetts prisoner's dock or box has been described thusly:

"The dock is a box approximately four feet square and four feet high. It is open at the top so that the defendant's head and shoulders can be seen when he or she is seated. The dock is placed typically at the center of the bar enclosure which separates the spectator's section from that portion of the courtroom reserved for trial principals. The dock is usually fifteen to twenty feet behind counsel table, and is sometimes on a raised platform." *Walker v. Butterworth,* 457 F.Supp. 1233 (D.Mass.1978).

2. Appellant was sentenced to two successive life sentences. On November 3, 1980, the Appellate Division of the Suffolk County Superior Court Department reduced the petitioner's sentence to two concurrent life sentences.

tell us different. I know the arguments, pros and cons, having heard them. Until the Supreme Court tells me no we are going to follow—

Counsel: I take my exception. And I also just mention for the record so I will be protected later on because I have gotten an extremely favorable opinion on this from Justice Caffrey on the Walker case, and I just wanted to make it clear on the record that I consider this a Constitutional question."

## II. Prior Case Law

In *Walker v. Butterworth,* 457 F.Supp. 1233, 1239 (D.Mass.1978), referred to by counsel in the colloquy above, the court, while finding that "the prisoner's dock is an anachronism in a modern trial which could have been abandoned years ago", concluded that it "is not unconstitutional *per se*" and that, in that case, it had "neither diluted [petitioner's] presumption of innocence nor denied him a fair and impartial trial." On appeal, finding other grounds which compelled us to grant appellant's petition, we did not reach the question of whether that appellant's confinement to the prisoner's dock was harmful error.

We noted, however, that, like the compelled attire in prison garb held unconstitutional in *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), confinement of the accused to a prisoner's dock may erode the jury's presumption of the accused's innocence.

"The practice of isolating the accused in a four foot high box very well may affect a juror's objectivity. Confinement in a prisoner dock focuses attention on the accused and may create the impression that he is somehow different or dangerous. By treating the accused in this distinctive manner, a juror may be influenced throughout the trial. The impression created may well erode the presumption of innocence that every person is to enjoy." *Walker v. Butterworth,* 599 F.2d 1074, 1080 (1st Cir.1979).

Discounting the state interests attributed to use of a prisoner's dock—"identification of the accused person to the jury; minimizing the danger of harm to the public court, and jury; and encouraging maintenance of courtroom order"—as achievable in less prejudicial ways, two members of the panel commented by way of dictum:

"The right of a fair trial is simply too delicate and valuable to be impeded by an anachronistic practice. Because confinement in the prisoner dock is unnecessary to accomplish any important state interest, and may well dilute the presumption of innocence, the Massachusetts prisoner dock must be considered, as a general matter, to be an unconstitutional practice." *Id.* at 1081.

Noting our commentary in *Walker v. Butterworth* but reasoning that "the dock has served and may continue to serve a valid function in those cases where some form of restraint is necessary to prevent escape or to protect others in the court room", the Supreme Judicial Court announced a new rule[3] in *Commonwealth v. Moore,* 379 Mass. 106, 111, 393 N.E.2d 904 (1979):

"For the future, we think that a judge confronted with a request that the defendant be permitted to sit at counsel table should not deny the request unless he follows the 'more circumspect procedure' we have prescribed for unusual security measures. See *Commonwealth v. Brown,* 364 Mass. 471, 478–80 [305 N.E.2d 830] (1973). In particular, the reasons for the denial should be stated on the record. But where inquiry reveals that some security measures are necessary, and that the dock is the least restrictive measure available, we think its use is proper."

Finding no error or, if error, no prejudice in defendant's confinement to the dock, the court noted that "the defendant did not sharply raise a constitutional objection", that "the [trial] judge was concerned with security", and that "the judge gave timely and forceful instructions to the jury to

---

**3.** While announcing a new rule of procedure for the Massachusetts courts, the Supreme Judicial Court did not address the constitutionality of the use of the prisoner's dock.

draw no inference from the fact that the defendant was in the dock, explaining that it was only a matter of custom." *Id.* at 111.

In *Bumpus v. Gunter,* 635 F.2d 907 (1st Cir.1980), we once again reviewed the claim of a habeas corpus petitioner that confinement to the prisoner's dock violated his constitutional right to a fair trial. Because the trial judge had stated "specific and supported security reasons" for the use of the dock, we found no constitutional violation:

"Even assuming without deciding that there is a constitutional right in ordinary circumstances not to be required, over objection, to sit in such an enclosure, the security considerations existing in the present trial sufficiently justified the requirement." *Id.* at 914–15.

We further expressed the opinion that "[t]he concerns over the use of the dock expressed by this court in *Walker v. Butterworth* would appear to be satisfied by the policy announced in *Commonwealth v. Moore*", and speculated, with some lack of prescience, that "in the unlikely event the issue of constitutionality ever again arises in a particular case, it will have to be resolved in light of all the facts in that case, not in terms of a *per se* rule." *Id.* at 914, 914 n.2 (citation omitted).

III. *The Use of the Prisoner's Dock in this Case*

Unlike in *Bumpus* or in *Moore,* there is no evidence here that the trial court was concerned over security. Defense counsel's affidavit, making reference to appellant's behavior during two years of incarceration and at his first trial, alleged that "allowing [appellant] to sit at counsel table will not present any hazards to the orderly judicial process or to the security of its personnel." The trial court made no further inquiry into the matter and nothing in the record con-tradicts counsel's affidavit. Unlike the defendant in *Moore,* appellant here made a clear constitutional objection after having raised the constitutional issue in a pre-trial motion.

In once again evaluating for constitutional error the confinement of an accused to the prisoner's box,[4] we reiterate, *see Walker v. Butterworth, supra,* 599 F.2d at 1080, that such confinement, like appearance in prison attire, is a "constant reminder of the accused's condition" which "may affect a juror's judgment", eroding the presumption of innocence which the accused is due. *Estelle v. Williams,* 425 U.S. 501, 504–05, 96 S.Ct. 1691, 1693–94, 48 L.Ed.2d 126 (1976). In finding unconstitutional the compelled appearance in prison garb of the accused, the Court in *Estelle* noted that the American Bar Association's Standards for Criminal Justice disapproved the practice. *Id.* at 504, 96 S.Ct. at 1693. Those standards read as follows with respect to the custody and restraint of defendants and witnesses:

"(a) During trial the defendant should be seated where he can effectively consult with his counsel and can see and hear the proceedings.

(b) An incarcerated defendant or witness should not be required to appear in court in the distinctive attire of a prisoner or convict.

(c) Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing

---

4. The district court denied appellant's habeas corpus petition on the basis that the rule announced in *Commonwealth v. Moore* should not be applied retrospectively. Appellant argues that the retroactivity of a new rule is not at issue because the prisoner's dock has been unconstitutional since *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and, alternatively, that our decision in *Walker v. Butterworth* announced a constitutional rule that should be applied retrospectively. We agree with appellee, however, that neither we nor the Supreme Judicial Court have thus far held that confinement of the accused to the prisoner's dock during trial constitutes constitutional error.

the proof and determining guilt." ABA Project on Standards for Criminal Justice, Trial by Jury § 4.1, pp. 91–92 (App. Draft 1968) [hereinafter ABA Standards]. *See also* ABA Standards for Criminal Justice § 15–3.1 (1980) ("custody and restraint of defendants and witnesses") (substantially unchanged except to reflect the holding in *Estelle*—"the trial judge should not permit a defendant or witness to appear at trial in the distinctive attire of a prisoner, unless specifically waived by the defendant").

We note that in the discussion of these Standards, already a decade and a half old, there were exceedingly few jurisdictions in which the dock survived.[5] We suspect that there are even fewer today.[6] This evidence from contemporary custom is not without some constitutional significance.

Confinement in a prisoner's dock, if less so than appearance in prison attire, is nonetheless a "brand of incarceration" which is inconsistent with the presumption of innocence. *See* ABA Standards, commentary on § 4.1(b). Such confinement also implicates both of the other fair trial concerns embodied in the ABA Standards.

Even if the court makes allowance for consultation with the confined defendant, access to counsel and thus the right to effective assistance to counsel is inevitably burdened by defendant's confinement to a prisoner's dock. *See People v. Zammora*, 66 Cal.App.2d 166, 152 P.2d 180, 214–16 (1944) (Cal.Dist.Ct.App.) (denial of defendants' opportunity to sit at counsel table, or consult with counsel during course of trial except when counsel left counsel table and went over to where defendants were seated, violated due process). Here, defense counsel's affidavit in support of appellant's pre-trial motion to sit at counsel table specifically averred that because there would be extensive testimony concerning appellant's conduct over a period of several days, consultation with defendant during the course of testimony was necessary to his conduct of appellant's defense.

■ The only significant state interest in the continued use of the prisoner's dock is as a minimum security measure.

"Ordinarily, a criminal defendant should be permitted to sit at counsel table. But the dock has served and may continue to serve a valid function in those cases where some form of restraint is necessary to prevent escape or to protect others in the court room. Although the restraint imposed is minor, it has sometimes proved a sufficient obstacle so that court officers could reach the defendant in time to prevent escape or harm to others. Where some form of security is essential, the dock seems far superior to surrounding the defendant with security personnel." *Commonwealth v. Moore, supra,* 379 Mass. at 110, 393 N.E.2d 904; *see also Bumpus v. Gunter*, 635 F.2d at 914. *But cf. Walker v. Butterworth, supra,* at 1080–81 (evaluating state interests).

The prisoner's dock, like other physical restraints, should thus be employed only when "the trial judge has found such restraint reasonably necessary to maintain order"

---

**5.** Commentary on § 4.1(a) indicated that "[a]pparently separation of incarcerated defendants from their counsel by placing them in a prisoner's dock or by other means still occurs on occasion." The most recent case cited by that commentary involving the use of a prisoner's dock or box was *State v. Kupis*, 37 Del. 27, 179 A. 640 (1935). No more recent cases are cited in the 1980 update of the Standards. *See* ABA Standards for Criminal Justice § 15–3.1 (1980) (commentary on § 15–3.1(a)). We understand that while incarcerated prisoners may be placed in the dock during arraignment proceedings, it is no longer used in Delaware during the course of a trial.

**6.** Our own research reveals only occasional contemporary reference to a prisoner's dock or box in a handful of jurisdictions—*see, e.g., State v. Smith*, 304 N.C. 706, 285 S.E.2d 800 (N.C.1982) (no error in prospective jurors seeing defendants in prisoner's box—area inside 3' × 8' railing seating 3 people—when judge gave curative instruction; area "customarily used by those in custody awaiting trial"); *State v. Adams*, 333 A.2d 304, 132 N.J.Super. 256 (1975) (defendant identified by eventual witness while awaiting arraignment in prisoner's dock); *State v. Carmody*, 291 A.2d 610, 112 N.H. 179 (1972) (same)—and no indication in any jurisdiction that incarcerated defendants are routinely confined to a prisoner's dock or box during the course of a jury trial.

 

and when cured by an instruction to the "jurors that such restraint is not to be considered in assessing the proof and determining guilt." ABA Standards § 4.1(c). The trial judge in this case made no findings that indicated restraint was necessary for security and gave no curative instructions to the jury.

■ We hold that under all the circumstances of this case—particularly in the light of appellant's previously decorous behavior during incarceration and a prior trial, as well as the prospect of a trial involving much testimony concerning conduct of appellant over a substantial period—it was constitutional error for the trial court, without any finding that restraint was necessary, over appellant's constitutional objection, to deny appellant's motion to allow him to sit at counsel table rather than in the prisoner's dock. Nor can we say that such error was harmless beyond a reasonable doubt. *See Estelle v. Williams, supra,* 425 U.S. at 506–08, 96 S.Ct. at 1694–95; *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The first jury was unable to agree upon a verdict, and the second jury, after deliberating for a day and a half, returned second degree murder verdicts despite the fact that, based on the prosecutor's theory of the case, the murders for which appellant was tried could only have been the result of cold-blooded planning and premeditation. As argued persuasively by counsel on appeal,

> "Any suggestion that [appellant] was a dangerous person, implanted in the minds of the jurors through observation of [appellant] confined in the dock day after day, may have tipped the scales of justice.... [A]ny implication that [appellant] was the type of person whom it was necessary to segregate from jurors, spectators, court personnel, and even his own counsel ... cannot fail to impact upon juror deliberation."

Appellant may have been additionally prejudiced by the burden which placement in the prisoner's dock put upon effective consultation with counsel during the course of the trial.

Our holding is a narrow one. We do not announce a *per se* rule. We do find that in all the circumstances of this case appellant's confinement to the prisoner's dock unconstitutionally impaired his right to a fair trial.

*Reversed and remanded with instructions that a writ of habeas corpus shall issue unless the Commonwealth makes arrangements for a new trial within ninety days.*