COMMONWEALTH *vs.* JOHN P. REAL. November 29, 1984. *Practice, Criminal,* New trial, Location of defendant in courtroom, Disclosure of identity of informant.

The defendant took no appeal from his 1979 convictions by a jury on various indictments stemming from his possession of a shotgun with a barrel

---

less than eighteen inches in length. Four years later, however, he brought a motion for a new trial, which the trial judge denied on procedural grounds (see *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 [1980]) and, in the alternative, on the substantive grounds, were he to consider them, all for reasons set out in his findings made under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). We affirm.

*Commonwealth* v. *Harrington*, 379 Mass. at 449, provides that "[t]he trial judge's discretionary power to give relief from . . . a waiver [of available appellate proceedings] by permitting such issues to be raised for the first time by a motion for a new trial should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." See also *Earl* v. *Commonwealth*, 356 Mass. 181, 184 (1969); *Commonwealth* v. *Pisa*, 384 Mass. 362, 365-367 (1981). It is clear from the trial judge's written decision that he did not exercise his discretion to consider Real's claims, which would have thereby required us to review his rulings thereon. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973). Rather, the trial judge held Real to his waiver of appellate review of the issues he sought to raise by his motion for a new trial. Thus, the question before us is whether Real has shown that there was such error at his trial that it was an abuse of discretion to deny his motion for a new trial.

1. Real argues that he was denied various constitutional rights by reason of his confinement in the prisoner's dock during his trial without justification based upon security measures. To be sure, such confinement has been the subject of continuous and grave concern as a matter of policy and because of constitutional implications. See *Commonwealth* v. *Brown*, 364 Mass. 471, 478-480 (1973); *Commonwealth* v. *Moore*, 379 Mass. 106, 111 (1979); *Walker* v. *Butterworth*, 457 F.Supp. 1233, 1239 (D. Mass. 1978), aff'd, 599 F.2d 1074, 1080-1081 (1st Cir. 1979); *Young* v. *Callahan*, 700 F.2d 32, 34-37 (1st Cir.), cert. denied, 464 U.S. 863 (1983).

At the time of Real's trial, June 13, 1979, the rule in *Moore*, although perhaps foreseeable in view of *Brown*, had not been enunciated. Additionally, there was strong language by the Federal District Court against the use of the dock in *Walker*, 457 F.Supp. at 1239 ("[T]he prisoner's dock is an anachronism in a modern criminal trial which could have been abandoned years ago"). Moreover, at the beginning of Real's trial, the prosecutor advised the trial judge that use of the dock had been declared unconstitutional by the First Circuit, presumably referring to *Walker*, 599 F.2d at 1080-1081. Defense counsel then stated, "In light of that, may I request that Real be allowed to sit behind the bar?" The request was denied. No instruction to the effect that no inference adverse to the defendant was to be drawn from his presence in the dock was requested or given.

Use of the prisoner's dock in the absence of security needs has not been held to be per se reversible constitutional error. See *Young* v. *Callahan*, 700 F.2d at 37. Although the trial judge never considered the need for

security before denying Real's request to be seated outside the dock, we cannot say, in view of the circumstances of the case, that there is a substantial risk that his right to a fair trial was impaired. His trial was of short duration (one day, including jury deliberation of about three and one-half hours), there was no clear constitutional objection by defense counsel nor an indication by him that he would have frequent need in the trial to confer with Real, and the evidence at trial consisted only of the testimony of two special agents, to whom Real sold the gun after two meetings with them, and the keeper of the records for the firearms record bureau of the Department of Public Safety. Compare *Young* v. *Callahan*, 700 F.2d at 37.

2. Nor is there a substantial risk that Real's rights to confront his accusers and to a fair trial were impaired by reason of the trial judge's refusal to compel the Commonwealth to reveal the identity of an informant. A reading of the trial transcript (put in evidence at the hearing on the motion) reveals that, after one of the agents testified that an informant disclosed to him the true name of Real, with whom he had been dealing as "Porky," defense counsel sought the name of the informant because the informant "might very well be in the possession of, I don't know what evidence . . . ." Thus no showing was made as to how disclosure of the informant's identity would have been helpful. See *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 126, 139-140 (1981); *Commonwealth* v. *Abdelnour*, 11 Mass. App. Ct. 531, 538 (1981).

3. We see no abuse of discretion in the trial judge's decision that Real's claims of error came too late. See *Commonwealth* v. *Hopkins*, 18 Mass. App. Ct. 982, 983-984 (1984).

*Order denying motion for new trial affirmed.*

The case was submitted on briefs.

*Steven J. Rappaport* for the defendant.

*James D. Barretto*, Assistant District Attorney, for the Commonwealth.