USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1292

 ALBERT F. MOORE, JR.,

 Petitioner,

 v.

 JOSEPH PONTE,

 Respondent.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nancy J. Gertner, U.S. District Judge]

 ____________________

 Before

 Stahl, Circuit Judge,

 Magill, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 _____________________

 John H. LaChance, by appointment of the Court, with whom
Victoria L. Nadel, was on brief, for petitioner.
 Gregory I. Massing, Assistant Attorney General, Criminal
Bureau, Appellate Division, with whom Scott Harshbarger, Attorney
General, was on brief, for respondent.

 ____________________

 August 2, 1999
 ____________________ MAGILL, Senior Circuit Judge. A Massachusetts jury
convicted Albert Moore, Jr. of first degree murder on June 18,
1976. The Essex Superior Court sentenced Moore to life
imprisonment without parole. On direct appeal, the Supreme
Judicial Court of Massachusetts (SJC) affirmed Moore's conviction. 
See Commonwealth v. Moore (Moore I), 393 N.E.2d 904 (Mass. 1979). 
In 1988, Moore filed a motion for new trial in state court,
alleging that he was denied due process by being forced to sit in
a prisoner's dock during trial and that the trial court gave
erroneous instructions to the jury on the malice element of first
degree murder and the reasonable doubt standard. The court denied
Moore's motion for new trial, and the SJC denied Moore's motion for
leave to appeal. Moore subsequently filed a petition for writ of
habeas corpus in federal district court pursuant to 28 U.S.C.
 2254, which the district court denied. We affirm.
 I. Background
 We briefly review the facts adduced at trial concerning
the killing of Donald Rimer. A more thorough review of this
evidence may be found in the district court's opinion below. See 
Moore v. Ponte (Moore II), 924 F. Supp. 1281, 1292-93 (D. Mass.
1996).
 Donald Rimer was the co-owner and construction supervisor
of a project on which Albert Moore, Jr. served as foreman. The
evidence at trial showed that Moore disliked Rimer, made numerous
derogatory statements about him, and told a friend that he intended
to kill him. In the early morning hours of April 14, 1972, Moore
told a friend that he was going to kill Rimer and asked to borrow
a lug wrench. Moore showed the friend a gun and a key to Rimer's
townhouse.
 The evidence at trial also showed that Moore went to
Rimer's townhouse later that morning and struck Rimer in the head
several times with a blunt object while he was sleeping. Five
witnesses testified that Moore admitted to them that he had killed
Rimer. In addition, police introduced numerous pieces of evidence
that linked Moore to the crime.
 Moore was indicted for Rimer's murder in January 1976 and
was tried before a jury in Essex Superior Court. Before trial
commenced, Moore's counsel asked the court if Moore could sit at
counsel's table instead of being placed in the prisoner's dock. 
The SJC described the prisoner's dock as follows:
 Most court rooms used for criminal sessions in
 the Commonwealth are equipped with a dock, a
 wooden enclosure, usually measuring four or
 five feet square, in which it has long been
 customary for the defendant to sit during
 trial. The dock is open at the top, so that
 the upper torso of a seated person is visible. 
 The judge, the court clerk, court officers and
 the jury occupy similar enclosures, the
 arrangement of which varies from court room to
 court room. The dock as we know it appears to
 be a vestige of the English baledock . . . .

Moore I, 393 N.E.2d at 906-07. Moore's counsel stated that he knew
of no basis in law for his request, but said that he was bothered
by the dock's potential effect on the jury. The judge stated that
he would confer with the Sheriff and that counsel's request would
depend on security. See id. at 906. The court subsequently denied
Moore's request, and Moore sat in the dock throughout trial.
 At the close of all evidence, the court instructed the
jury on the reasonable doubt standard and the malice element of
first degree murder. The instructions on reasonable doubt equated
reasonable doubt as doubt for which a good reason could be given,
equated reasonable doubt with moral certainty, stated that one is
morally certain when he would act on his conviction in matters of
the highest importance in his daily affairs, and emphasized that
the government's burden of proof was not absolute and warned
against applying too high a standard. In its instructions on the
malice element, the trial court told the jury that it could presume
satisfaction of the malice element if the Commonwealth established
that the killing was done without excuse or justification. Moore
did not object to these jury instructions at trial.
 The jury ultimately found Moore guilty of murder in the
first degree, and the court sentenced him to life imprisonment
without parole. Moore appealed his conviction to the SJC,
challenging, inter alia, his placement in the prisoner's dock. 
Moore did not challenge the jury instructions on reasonable doubt
or malice in his direct appeal. The SJC affirmed Moore's
conviction. See id. at 911.
 On October 5, 1989, Moore filed a motion for new trial in
state court alleging ten trial court errors. Three claims raised
in the motion that are relevant to this appeal include: (1) the
trial court violated Moore's due process rights by compelling him
to sit in the prisoner's dock throughout trial; (2) the jury
instructions on the reasonable doubt standard did not properly
inform the jury of the Commonwealth's high burden of proving the
defendant's guilt; and (3) the jury instructions on malice violated
due process by not requiring the Commonwealth to prove this element
of the offense. On January 4, 1990, the state trial judge
summarily denied Moore's motion for new trial, finding that most of
his claims had been previously advanced or were known but not
raised in earlier proceedings. The court also stated that Moore's
claims appeared to lack merit. In June 1990 Moore requested leave
to appeal the decision to the SJC, pursuant to Chapter 278, 33E
of the Massachusetts General Laws. A single justice of the SJC,
acting as a "gatekeeper," denied Moore's request on the grounds
that the issues raised in the motion were not new or substantial.
 On February 6, 1991, Moore filed a petition for writ of
habeas corpus in federal district court raising the same ten trial
errors alleged in his motion for new trial before the Massachusetts
courts. The district court initially dismissed all of Moore's
claims, except for his prisoner's dock claim, finding that they
were procedurally barred by adequate and independent state
procedural grounds. In particular, the court held that the SJC
gatekeeper's denial of leave to appeal because the issues raised
were not new or substantial precluded federal review of the claims. 
The court appointed an attorney to represent Moore on his
prisoner's dock claim, and the case was reassigned to another judge
for consideration on the merits.
 Moore's appointed counsel moved the court to reconsider
the prior order dismissing the jury instructions claims on
procedural grounds. Moore argued that the SJC gatekeeper's denial
of leave to appeal could not preclude federal review of his jury
instructions claims. He further argued that the state courts'
reliance on Moore's failure to contemporaneously object to the jury
instructions could not prevent federal review because Massachusetts
courts do not consistently apply that procedural rule. The
district court agreed with Moore's arguments and proceeded to
analyze Moore's jury instructions claims on the merits. See Moore
II, 924 F. Supp. at 1295-98.
 On the merits, the district court assumed that the trial
court's use of the prisoner's dock and its instructions on malice
violated due process, but concluded that both errors were harmless. 
See id. at 1291-97. In a subsequent order, the court also
dismissed Moore's challenge to the jury instructions on reasonable
doubt, finding that they were constitutionally sufficient. Moore
now appeals from the district court's denial of his petition for
writ of habeas corpus.
 II. Jury Instructions
 Before turning to the merits of Moore's appeal, we first
consider the Commonwealth's argument that Moore's jury instructions
claims are barred by adequate and independent state procedural
grounds. The Commonwealth contends that the district court erred
in holding that Massachusetts courts waive the contemporaneous
objection requirement in cases involving challenges to jury
instructions on reasonable doubt. The Commonwealth also argues
that the district court erred in holding that the SJC gatekeeper's
denial of Moore's request for leave to appeal did not bar federal
consideration of Moore's challenge to the jury instructions on
malice and reasonable doubt. We conclude that an adequate and
independent procedural bar precludes federal review of the jury
instructions on reasonable doubt, but conclude that no such bar
exists for Moore's challenge to the instructions on malice.
 A. Applicable Law
 When a state court decision rests on a state procedural
rule that is independent of the federal question and adequate to
support the judgment, a federal court may not review a question of
federal law raised in a petition for writ of habeas corpus. See
Coleman v. Thompson, 501 U.S. 722, 729 (1991). Considerations of
federalism and comity generally prohibit a federal court from
ignoring the state's legitimate interests in applying its adequate
and independent procedural rules. See id. at 730-31.
 "A defendant's failure to object in a timely manner at
his state criminal trial may constitute an adequate and independent
state ground sufficient to trigger the bar rule so long as the
state has a consistently applied contemporaneous objection
requirement and the state court has not waived it in the particular
case by resting its decision on some other ground." Burks v. 
Dubois, 55 F.3d 712, 716 (1st Cir. 1995).
 However, even if a petitioner has procedurally defaulted
a claim in state court, a federal court may reach the merits of his
petition if he shows "cause and prejudice" or that the
constitutional error probably resulted in the conviction of a
person who is actually innocent. See Simpson v. Matesanz, 175 F.3d
200, 209 (1st Cir. 1999).
 B. Jury Instructions on Reasonable Doubt
 Moore contends that neither the contemporaneous objection
rule nor the SJC justice's denial of leave to appeal prevents
federal review of his challenge to the jury instructions on
reasonable doubt. We disagree because this court's recent decision
in Simpson dictates that these rules impose a procedural bar that
precludes federal review of this claim.
 In Simpson, this court held that waiver of a challenge to
jury instructions on reasonable doubt and an SJC gatekeeper's
denial of leave to appeal impose an adequate and independent
procedural bar which precludes federal review. See id. at 205-09. 
This court explicitly rejected the arguments Moore now makes
regarding the Massachusetts courts' supposedly inconsistent
application of this procedural bar in these types of challenges. 
See id. at 206-09. Because Simpson is dispositive of this issue,
we now hold that the district court erred in concluding that
Moore's challenge to the jury instructions on reasonable doubt was
not barred by adequate and independent procedural grounds.
 Notwithstanding this procedural default, Moore contends
that he has shown cause for his default because the law regarding
challenges to reasonable doubt jury instructions had not developed
until the Supreme Court's seminal opinions in the 1990s. See
Victor v. Nebraska, 511 U.S. 1 (1994); Cage v. Louisiana, 498 U.S.
39 (1990) (per curiam). Moore is correct in recognizing that novel
legal theories may provide grounds for finding cause for a
procedural default, see Reed v. Ross, 468 U.S. 1, 16 (1984), but
the Simpson court recognized that claims like the ones raised in
Moore's petition were available to counsel before 1975, and thus
before Moore's trial and direct appeal. See Simpson, 175 F.3d at
210-15. Therefore, we conclude that Moore cannot show cause for
his procedural default and hold that Moore's claim regarding the
jury instructions on reasonable doubt may not be reviewed in this
petition for writ of habeas corpus. Accordingly, we affirm the
district court dismissal of this claim, albeit on different
grounds.
 C. Jury Instructions on Malice
 The Commonwealth contends that the district court erred
in ruling that the SJC gatekeeper's denial of Moore's motion for
leave to appeal under 33E does not impose a procedural bar that
precludes our review of Moore's challenge to the jury instructions
on malice. We disagree and hold that no procedural bar precludes
federal consideration of this claim. On the merits, we find that
the jury instructions on malice were constitutionally deficient,
but conclude that the error was harmless.
 1. Procedural Bar
 As discussed above, a procedural rule may bar federal
consideration of a claim in a habeas petition only if the state
consistently applies that rule. See Burks, 55 F.3d at 716. In
contrast to their treatment of challenges to jury instructions on
reasonable doubt, Massachusetts courts have chosen to waive the
contemporaneous objection requirement when reviewing challenges to
erroneous jury instructions on malice which were given before the
Supreme Court announced its decision in Sandstrom v. Montana, 442
U.S. 510 (1979). See, e.g., Commonwealth v. Sires, 542 N.E.2d 580,
581 n.2 (Mass. 1989) ("The defendant did not object to the burden-
shifting language at his trial. However, because the defendant's
trial and direct appeal both occurred prior to the Sandstrom
decision, he did not have a genuine opportunity to raise his
constitutional claim on those occasions." (internal quotation marks
and alterations omitted)); see also Libby v. Duval, 19 F.3d 733,
735 n.5 (1st Cir. 1994) ("[A]lthough petitioner did not object to
the challenged instruction at the time it was given, Massachusetts
has waived its contemporaneous objection rule in the Sandstrom
error context where the error occurred prior to the Sandstrom
decision."); Commonwealth v. Adrey, 493 N.E.2d 875, 877 (Mass.
1986) ("We have previously held that . . . constitutional theories
[regarding the impropriety of mandatory presumptions in jury
instructions on malice] were not sufficiently developed for a
defendant to be chargeable with knowledge about them until the
Supreme Court's decision in [Sandstrom]."). Because Massachusetts
courts overlook the contemporaneous objection requirement in pre-
Sandstrom cases, the state court's reliance on a procedural bar to
preclude review of this issue constitutes an inconsistent
application of its procedural rules and cannot prevent federal
review of this claim. We, therefore, proceed to analyze the merits
of Moore's claim of error.
 2. Merits
 Moore contends that the trial court's jury instructions
on malice created an improper mandatory presumption that violated
his due process rights. The Commonwealth concedes that a portion
of the jury instructions on malice contained an improper mandatory
presumption, but argues that other language in the instructions
cured this defect or, in the alternative, that the defect was
harmless error. We conclude that the trial court's instructions on
malice were constitutionally deficient, but find that the error was
harmless.
 Evidentiary charges in jury instructions that relieve the
government of its burden of proving each element of the offense
beyond a reasonable doubt violate the Due Process Clause of the
Fourteenth Amendment. See Sandstrom, 442 U.S. at 520-24. 
Accordingly, jury instructions that create mandatory presumptions--
which instruct a jury that it must infer an elemental fact, such as
malice, from a basic fact, such as a knowing act--may result in
such a violation. See Hill v. Maloney, 927 F.2d 646, 648-49 (1st
Cir. 1990). The challenged portion of the jury instructions on
malice stated, "[w]here the fact of killing is shown and there are
no circumstances to disclosed [sic] tending to show justification
or excuse, there is nothing to rebut the natural presumption of
malice." Trial Tr. at 2015. The Commonwealth concedes that this
portion of the instruction created an impermissible mandatory
presumption on the malice element.
 Even if a jury instruction creates an impermissible
mandatory presumption, we must still consider "whether other parts
of the instruction explained 'the particular infirm language to the
extent that a reasonable juror could not have considered the charge
to have created an unconstitutional presumption.'" Hill, 927 F.2d
at 649 (quoting Francis v. Franklin, 471 U.S. 307, 315 (1985)). To
make this assessment, we must "determine whether other language in
the charge explains the infirm language sufficiently so that there
is no reasonable likelihood that the jury believed it must find
malice if it found petitioner did the [killing without excuse or
justification]." Id. at 651.
 Although other portions of the instructions correctly
described the malice element, nothing in those statements informed
the jury that the presumption was permissive rather than mandatory. 
Thus, we conclude that the instructions on malice created an
impermissible mandatory presumption that was not cured by other
language in the instructions.
 Although we conclude that the jury instructions on malice
were constitutionally deficient, we must still consider whether the
trial court's error was harmless. See Libby, 19 F.3d at 738. We
conclude that it was.
 A Sandstrom error may be considered harmless if the
Commonwealth shows that the error did not have a substantial and
injurious effect or influence on the jury's verdict. See id. at
739-40. After reviewing the record, we conclude that the jury
instructions on malice did not have such an effect.
 The record provides substantial evidence that the
defendant killed Rimer with the requisite state of mind to
establish murder in the first degree. The undisputed evidence
showed that Rimer was killed as a result of several blows to the
head with a blunt object. Testimony also showed that Rimer was
asleep at the time of the attack. At trial, the parties disputed
the identity of the killer, not whether he possessed the requisite
state of mind for a murder conviction. Cf. Neder v. United States,
___ U.S. ___, No. 97-1985, 1999 WL 373186, at *11 (June 10, 1999)
(recognizing that trial court's failure to instruct jury on element
of offense is harmless when existence of element is uncontested and
supported by overwhelming evidence). The jury also found that
Moore killed Rimer with deliberate premeditation, a prerequisite to
first degree murder. This court has recognized that a jury's
finding of deliberate premeditation is generally inconsistent with
a finding that the jury relied on presumed intent. See Douchette
v. Vose, 842 F.2d 538, 542-43 (1st Cir. 1988). In light of these
considerations, we conclude that the trial court's erroneous
instructions on malice did not have a substantial or injurious
effect on the jury's verdict. The error was therefore harmless and
does not provide a basis for habeas relief.
 III. Prisoner's Dock
 Moore, relying on this court's decision in Young v.
Callahan, 700 F.2d 32 (1st Cir. 1983), asserts that he was deprived
of due process by being required to sit in a prisoner's dock
throughout trial even though the dock served no security interest
in his case. The Commonwealth argues that Moore may not raise this
claim of error because he relies on a rule of criminal procedure
not announced until after his conviction became final. Although a
defendant generally may not rely on a new rule of criminal
procedure, we conclude that the rule announced in Young was not a
"new rule" and that Moore may rely on it to support his claim of
error. On the merits, we conclude that the trial court's use of
the dock did not result in a deprivation of due process.
 A. Teague Analysis
 A defendant alleging constitutional error in a federal
habeas proceeding may not generally take advantage of new rules of
criminal procedure announced after his conviction has become
final. See Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality
opinion). However, a case does not announce a "new rule" of
criminal procedure if the rule was dictated by precedent existing
when the defendant's conviction became final. See Caspari v.
Bohlen, 510 U.S. 383, 390 (1994). A rule is "dictated by
precedent" whenever we can say that a state court has acted
objectively unreasonably, under existing precedent, in denying the
relief the defendant now seeks in federal court. See O'Dell v.
Netherland, 521 U.S. 151, 156 (1997). "At bottom, . . . the Teague
doctrine validates reasonable, good-faith interpretations of
existing precedents made by state courts even though they are shown
to be contrary to later decisions." Id. (internal quotation marks
omitted).
 This court first held that use of the prisoner's dock in
the absence of security concerns violated due process in 1983, see
Young, 700 F.2d at 37, well after Moore's conviction became final
in 1979. The district court concluded that the rule announced in
Young was not a "new rule" because it was dictated by precedent
existing when Moore's conviction became final. See Moore II, 924
F. Supp. at 1289-91. We agree with the district court's analysis.
 In 1970, the Supreme Court indicated its approval of
using physical restraints to control unruly defendants in criminal
trials, but stated that such restraints should only be used as a
last resort. See Illinois v. Allen, 397 U.S. 337, 344 (1970). In
1976, the Supreme Court was asked to consider whether compelling a
defendant to appear at trial in prison or jail attire violated his
due process rights. See Estelle v. Williams, 425 U.S. 501 (1976). 
The Supreme Court answered in the affirmative, holding that
defendants may not be compelled to attend trial in prison or jail
clothing because it could impair the presumption of innocence. See
id. at 504. The Court recognized that prison or jail attire
constantly reminds jurors of the defendant's incarceration and
could affect their judgment. See id. at 504-05. In contrast to
the use of physical restraints when they serve a legitimate
security purpose, the Court recognized that prison or jail attire
furthers no essential state policy. See id. at 505.
 Before Moore's conviction became final in 1979, this
court, in dicta, strongly criticized Massachusetts's practice of
forcing criminal defendants to sit in a prisoner's dock at trial. 
See Walker v. Butterworth, 599 F.2d 1074, 1080-81 (1st Cir. 1979). 
The Walker court noted that confinement in a prisoner's dock was
analogous to the compelled use of prison and jail attire condemned
in Williams. See id. at 1080. The court stated that "[b]ecause
confinement in the prisoner dock is unnecessary to accomplish any
important state interest and may well dilute the presumption of
innocence, the Massachusetts prisoner dock must be considered, as
a general matter, to be an unconstitutional practice." Id. at
1081. This court squarely confronted the issue in Young and held
that use of the prisoner's dock, in the absence of security
concerns and a curative instruction to the jury, violates a
defendant's right to due process. See 700 F.2d at 36-37.
 Based on our review of the legal landscape at the time
Moore's conviction became final, we agree with the district court's
well-reasoned conclusion that use of the prisoner's dock, absent
security concerns, would violate a defendant's right to due
process. See Moore II, 924 F. Supp. at 1289-91. In Williams, the
Supreme Court recognized the deleterious effect badges of
confinement could have on the presumption of innocence and the
jury's assessment of the defendant's guilt. See Williams, 425 U.S.
at 504-05. As this court recognized in both Walker and Young, the
Supreme Court's concerns about the effects of prison and jail
attire apply with equal force to defendants compelled to sit in a
prisoner's dock during trial. See Young, 700 F.2d at 34-37;
Walker, 599 F.2d at 1080-81. As the Young court also recognized,
the practice of using prisoner's docks in jury trials was nearly
non-existent in other jurisdictions, and ABA Standards, relied upon
by the Supreme Court in Williams, advised against using physical
restraints in the courtroom. See Young, 700 F.2d at 35-36 & nn.5-
6. In response to Moore's direct appeal, the SJC adopted a
prospective rule forbidding use of the dock absent security
concerns. See Moore I, 393 N.E.2d at 907-08. Although the SJC did
not directly address the constitutional issue in Moore I (because
Moore did not raise a constitutional objection), it reconsidered
the practice of using the prisoner's dock in response to this
court's Walker decision. See id. (citing Walker and ABA
Standards). Based on our review of the legal landscape at the time
Moore's conviction became final, we conclude that Young's
prohibition on the use of the prisoner's dock, absent security
concerns, did not constitute a "new rule" because it was compelled
by precedent existing at the time Moore's conviction became final. 
Therefore, Moore may rely on this rule to support his claim of
error. B. Merits
 After reviewing the record in this case, we conclude that
the trial court's use the prisoner's dock did not result in a
deprivation of due process. First, we note that the trial court
was clearly concerned about security when it considered Moore's
request to sit at counsel's table. See Moore I, 393 N.E.2d at 906,
908; cf. Young, 700 F.2d at 35 ("Unlike in Bumpus or in Moore,
there is no evidence here that the trial court was concerned over
security."). In response to counsel's request that Moore be
allowed to sit at counsel's table in lieu of the dock, the judge
said, "'I will make some inquiry from the sheriff to see, because
the Sheriff has, of course, the responsibility of security, so I
will make some inquiry with reference to your request to have him
sit next to you. That depends on security.'" Moore I, 393 N.E.2d
at 906. Although the judge did not state on the record the reasons
he ultimately denied Moore's request to sit at counsel's table, he
clearly articulated security concerns and indicated that he would
base his decision on those concerns. Furthermore, the court also
complied with Young's requirement that a curative instruction be
given to help alleviate the potential prejudicial effects of the
dock. See Trial Tr. at 577. In light of these circumstances, we
conclude that Moore's placement in the dock did not result in a
deprivation of due process.
 Even if we were to conclude that the trial court's use of
the prisoner's dock violated due process, we would agree with the
district court's well-reasoned conclusion that the error was
harmless. See Moore II, 924 F. Supp. at 1294-95. 
 As the district court properly recognized, the evidence
presented at trial of Moore's guilt was highly compelling. See id.
at 1292 (recounting the substantial evidence of Moore's guilt). 
Five independent witnesses testified that Moore admitted to killing
Rimer. Moore had a motive for killing Rimer, and the physical and
circumstantial evidence placed Moore at the crime scene. Moore
testified at trial, and we agree with the district court's
conclusion that the jury's impression of Moore was more likely the
result of his testimony and the government's evidence, rather than
speculation about his placement in the dock. Under these
circumstances, we conclude that even if the trial court's use of
the prisoner's dock did deprive Moore of due process, that error
did not have a substantial and injurious effect on the jury's
verdict and, thus, was harmless.
 IV. Conclusion
 In sum, we conclude that Moore's challenge to the jury
instructions on reasonable doubt is barred by adequate and
independent state procedural grounds. After reviewing the merits
of Moore's challenge to the jury instructions on malice, we find
constitutional error but conclude that it was harmless. Finally,
we conclude that Moore's placement in the prisoner's dock did not
violate his due process rights. The district court's dismissal of
Moore's petition for writ of habeas corpus is AFFIRMED.

 Concurrence Follows LIPEZ, Circuit Judge, (Concurring). I agree with the
result reached by my colleagues. With one exception, I also agree
with the reasoning set forth in their opinion. That one exception
relates to the conclusion that Moore's placement in the prisoner's
dock did not result in a deprivation of due process. The district
court chose not to resolve the due process issue raised by the use
of the dock, noting the failure of the trial judge to find an
explicit security justification for its use. See Moore II, 924 F.
Supp. at 1293. The district court further noted that this failure
to set forth such a justification "impedes meaningful appellate (or
collateral) review of his decision." Id. I agree with that
proposition. Therefore, taking the approach used by the district
court, I conclude that relief is not warranted because the error in
the use of the prisoner dock, if any, was harmless.