UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie C. COTTON, Jr.,
Defendant-Appellant.

No. 83–1310.

United States Court of Appeals,
Tenth Circuit.

Jan. 10, 1985.

Rehearing Denied Feb. 15, 1985.

Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl. (Layn R. Phillips, U.S. Atty. and Gerald Hilsher, Asst. U.S. Atty., Tulsa, Okl., with him on brief), for plaintiff-appellee.

Leonard M. Chesler, Denver, Colo., for defendant-appellant.

Before LOGAN and SETH, Circuit Judges, and FINESILVER, District Judge.*

SHERMAN G. FINESILVER, District Judge.

Willie C. Cotton, Jr. appeals from his jury trial conviction based on two counts of receipt and sale of a stolen motor vehicle in violation of 18 U.S.C. § 2313. As grounds for reversal, Cotton argues that the district court erred in (1) denying Cotton's motion to suppress evidence seized from a car in a totally unrelated arrest; (2) overruling Cotton's objection to the admission of evidence of other crimes; (3) denying Cotton's motion for mistrial based on the prosecution's question to a witness which Cotton asserts was a comment on his right to remain silent; and (4) denying Cotton's motion for mistrial based on witness testimony which prejudicially linked the appellant's name and activities with the "National Auto Theft Bureau". We have thoroughly reviewed the entire record on appeal and the findings and conclusions of the court below. We have also considered the arguments and authorities presented to us by the parties. We affirm the convictions.

## I. THE FACTS

The appellant's convictions resulted from charges that he received and disposed of a stolen 1979 Pontiac Grand Prix in June of 1981 (Count I) and of a stolen 1979 Toyota Celica in February of 1981 (Count III). The facts involved in these two counts are not presently involved in this appeal. Rather, the circumstances surrounding a totally unrelated arrest of the appellant in which evidence was seized must presently be considered because a portion of that evidence was admitted into evidence in the instant case. The appellant moved unsuccessfully to suppress that evidence at the trial below and now appeals the denial of that motion.

By stipulation, the facts of this unrelated arrest indicate that on December 2, 1981, a Mustang vehicle was stolen near Sallisaw, Oklahoma. Officer Riley Patton of Gore, Oklahoma, received a radio broadcast regarding the theft of the car plus a description of the Mustang and of a Camaro which was apparently traveling with it. The drivers of the two vehicles were also described in the broadcast. Officer Patton followed these cars into a parking lot where he stopped them and arrested the drivers. They were removed from the cars and handcuffed. No stipulation was reached as to which arrestee was driving which car. Another officer who arrived on the scene, Trooper Vernon Phillips of the Oklahoma Highway Patrol, seized a blue bank bag from the Camaro. The bag contained blank car titles, VIN plates and multiple sets of keys. Prior to searching the glove compartment or the trunk, Trooper Phillips obtained a search warrant.

## II. SEIZURE OF BLUE BANK BAG FROM CAMARO

The appellant first argues that the seizure of the blue bank bag was illegal and

* Honorable Sherman G. Finesilver, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

that the trial court therefore erred in denying his motion to suppress.

As the issue of standing was not determined by the court below, we do not now consider it on appeal.

■ With respect to the legality of the seizure, the appellant argues that the facts of this case place it outside the scope of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The appellant also distinguishes this case from the more recent *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) in which a search incident to arrest involving automobiles was directly at issue. The appellant argues that since he was handcuffed at the time the blue bank bag was seized, the seizure does not fall with the rationale of the "search incident to lawful arrest" line of cases. The appellant asserts that, standing outside the Camaro, handcuffed, he would have been physically unable to reach into the car to dispose of the blue bag or to pull a weapon from it.

■ We are of the opinion that the law simply does not support the appellant's argument. The Supreme Court expresses quite clearly in *Belton* its goal to formulate a workable rule whereby an officer in the field may be able to evaluate the circumstances surrounding a lawful arrest to determine whether seizure of items in the immediate area of the arrestee is called for. 453 U.S. at 458–60, 101 S.Ct. at 2863–64. Pursuant to that goal, the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864. This rule specifically includes the contents of any container, open or closed, found within the passenger compartment. *Id.* The rule as thus stated does not require the arresting officer to undergo a detailed analysis, at the time of arrest, of whether the arrestee, handcuffed

or not, could reach into the car to seize some item within it, either as a weapon or to destroy evidence, or for some altogether different reason. The facts surrounding each arrest are unique and it is not by any means inconceivable under those various possibilities that an arrestee could gain control of some item within the automobile. The law simply does not require the arresting officer to mentally sift through all these possibilities during an arrest, before deciding whether he may lawfully search within the vehicle.

The evolution of the law regarding the warrantless searches of automobiles has of necessity followed a different path than that of searches incident to lawful arrest in general. The arrestee may have hidden, within the close proximity of the car interior, either weapons or contraband which are easily obtainable. He also has a significantly lessened privacy interest in the objects found within the car than he would in objects found within his home. *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

■ We therefore believe that a legal analysis of a seizure of an object found within an automobile pursuant to a search incident to a lawful arrest, must of necessity involve special considerations that set it apart from the general law regarding searches incident to lawful arrest.[1] Each case involving a determination of whether a legal search of an automobile was effectuated must be decided on the individual facts of the search. Nonetheless, several basic principles common to all automobile search situations distinguish these cases from other search cases and dictate that a separate analysis be employed. The primary purpose of the exclusionary rule is to deter police misconduct resulting in violations of the fourth amendment. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). But in the context of a search of an automobile

---

1. *See generally* Alpert, Haas, *Judicial Rulemaking and the Fourth Amendment: Cars, Containers, and Exclusionary Justice*, 35 ALA.L.R. 23 (1984); Note, *Privacy Rights v. Law Enforcement Difficulties: The Clash of Competing Interests in New York v. Belton*, 59 DENVER L.J. 793 (1982).

where, as stated earlier, there is a diminished expectation of privacy in items found within the exposed interior of the vehicle and where one faces as well the loss of evidence through the vehicle's ease of mobility, relaxation of the stringent application of the exclusionary rule is called for. The act of the officer in seizing the bank bag under the totality of circumstances presented here was therefore reasonable.[2]

We also point out that in *Belton,* the Supreme Court specifically held that "the police may also examine the contents of any containers found within the passenger compartment..." 453 U.S. at 460, 101 S.Ct. at 2864. Therefore, the search and seizure of the contents of the bank bag was valid.

Our decision today is consistent with our past rulings. In *United States v. Merritt,* 695 F.2d 1263 (10th Cir.1982), a case involving an investigatory stop, not an arrest, as in this case, the three suspects were directed to get out of their vehicle. While two officers held shotguns on the suspects, the vehicle was searched and a revolver was discovered. We held, on an extension of the *Terry* search principle,[3] that the search was justified to protect the officers from harm due to weapons possibly hidden in the vehicle. One could make the argument that the shotguns trained on the suspects were comparable to handcuffs in terms of limiting the suspects' freedom of movement and therefore limiting their ability to grab weapons with which to harm the police officers or to destroy evidence. Nonetheless, we found the search of the vehicle to be an additional and lawful protective measure. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *United States v. Romero,* 692 F.2d 699 (10th Cir.1982); *see also United States v. Palumbo,* 735 F.2d 1095 (8th Cir.1984) (search incident to lawful arrest valid even though arrestee was handcuffed and in the presence of several police officers).[4]

■ In summary, we find that where an officer has made a lawful arrest of a suspect in an automobile, he may seize articles found within the interior of the automobile as part of a search incident to a lawful arrest, even where the arrestee is outside of the vehicle and handcuffed. This is due to the nature of automobile searches which involve a lessened expectation of privacy as well as an increased risk of loss due to the vehicle's mobility. The need for stable

---

**2.** Several courts have carved out "good-faith" exceptions to the exclusionary rule based on the principle that since the purpose of the rule is to deter police misconduct, no deterrent effect is served in situations where the officer's actions all along were based on well-intentioned, albeit mistaken, assumptions. *See, e.g., United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). *See generally* Baker, *Rights, Remedies and the Exclusionary Rule After U.S. v. Leon,* 1 Benchmark 23 (1984), Washington, D.C.

Some state legislatures have even enacted "good-faith" exceptions to the exclusionary rule. In 1981, Colorado passed its own "good-faith" statute, C.R.S. § 16–3–308 (Supp.1981), which sought to exempt two types of action from the effects of the exclusionary rule: "good-faith mistake" and "technical violation". The impact of this statute on the exclusionary rule in Colorado remains to be seen. For instances, in a quite recent decision handed down by the Colorado Supreme Court, the Court affirmed a lower court decision suppressing evidence seized during an investigatory stop when it determined that the scope of the stop (confiscation of possessions, handcuffing and placing the defendant in a police car) were too intrusive for an investigatory stop. *The People of the State of Colorado v. Cobbin,* 692 P.2d 1069 (Colo.1984). Although the Court acknowledged that the officer who handcuffed the defendant was under the "misimpression" that the initial officer broadcasting his description had probable cause for arrest, the Court did not analyze the facts under § 16–3–308 to determine if the officer's "misconduct" fell into a good-faith exception. *See generally* Note, *The Colorado Statutory Good-Faith Exception to the Exclusionary Rule: A Step Too Far?* 53 UNIV. OF COLO.L.R. 809 (1982).

**3.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**4.** We are aware of state court decisions which interpret state constitutions on the issue of automobile searches in a much more restrictive manner. *See, e.g., Washington v. Ringer,* 100 Wash.2d 686, 674 P.2d 1240 (1983). The federal constitution, as interpreted by the United States Court, however, must control our decision today.

guidelines for officers to follow in their efforts to guard against the destruction of evidence as well as to protect their own safety dictate this result. Upon an examination of the facts of each case, the court need do no more than examine the reasonableness of the officer's actions under the totality of the circumstances and in view of the above-stated concerns.

### III. ADMISSION OF EVIDENCE OF OTHER CRIMES

Next, the appellant argues that the trial court committed error in overruling his objection to the admission of evidence of other crimes; that is, the contents of the blue bank bag seized from the Camaro. (Exhibits 8B–H.) Specifically, the appellant argues that Rule 404(b) of the Federal Rules of Evidence prohibits admission of evidence of other crimes to prove character. It does allow the admission of such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Plaintiff's Exhibit 8 is a blue vinyl bank bag with the inscription "Admiral Bank" on the front. Exhibits 8B–H were included among the contents of the bag when it was seized on December 2, 1981. Exhibit 8B is a VIN plate or manufacturer's identification number for a Pontiac, Number 2Q69X8X124685. Exhibits 8C, D and E are vehicle certificates of title; "C" bears the control number 2941666; "D" has the control number 2941652; and "E" has control number 2941659. Exhibit 8G is a sales receipt from Jandebeur Cycle Co., Inc. and Exhibit 8H is a Bill of Sale from Harrison Motorsports, Inc.

■ We find the appellant's argument to be without merit. The above exhibits were properly admitted below to show motive, opportunity, intent and were within the spirit and tenor of Rule 404(b). *See United States v. Gamble*, 541 F.2d 873 (10th Cir. 1976).

### IV. COMMENT ON DEFENDANT'S SILENCE

Third, the appellant argues that the district court erroneously denied his motion for mistrial based on an alleged comment on the appellant's silence made by the prosecution. In questioning Corporal Dewayne Smith of the Tulsa Police Department, counsel for plaintiff asked about a previous interview Corporal Smith had had with the appellant. Corporal Smith testified that he told the appellant of his right to remain silent. ROA volume VI, p. 263. In pursuing the line of questioning regarding this earlier interview, counsel then asked Corporal Smith:

> Q: At any time during your conversation about the Citation, did he indicate to you that he wished to remain silent or did not discuss—
>
> MR. MOOK: Object, that's not admissible. Ask the jury to be admonished and move for a mistrial.
>
> THE COURT: All right. The objection will be sustained and the jury will not consider the last question.
>
> MR. MOOK: Move for a mistrial. The question itself is a comment on the defendant's exercise of his right to silence.

ROA, volume VI, pp. 264–65.

■ The appellant asserts that the prosecution's question itself was an impermissible comment on his right to remain silent. We disagree. We believe that the immediate admonition to the jury cured any potential problem raised by this question. *See United States v. Carter*, 430 F.2d 1278 (10th Cir.1970). It is furthermore apparent to us that the quick objection by appellant's counsel prevented any consideration by the jury as to whether the appellant exercised his right to remain silent. *See United States v. Merryman*, 630 F.2d 780 (10th Cir.1980). Therefore, we find no reversible error on this point. The appellant was not denied a fair trial as a result of this question.

### V. TESTIMONY LINKING DEFENDANT TO "NATIONAL AUTO THEFT BUREAU"

■ The appellant finally argues that the trial court erred in denying his motion

for mistrial based on witness testimony indicating that appellant's name was known to the "National Auto Theft Bureau". We find this argument to be meritless. The mere mention of the word "theft" in the context of a name is innocuous and did not prejudice the defendant. We believe that a common sense interpretation of the circumstances surrounding this testimony requires that we find no error in denying the motion for mistrial. The appellant has failed to meet his burden of showing that such denial amounted to reversible error. *See United States v. Slater*, 692 F.2d 107 (10th Cir.1982).

We affirm the convictions.