UNITED STATES of America, Plaintiff,

v.

James B. KIMBALL, Defendant.

Crim. A. No. 93–10063–01.

United States District Court,
D. Kansas.

Jan. 14, 1994.

Robin Fowler, Asst. U.S. Atty., Wichita, KS, for plaintiff.

S.A. Scimeca, Wichita, KS, for defendant.

**MEMORANDUM AND ORDER DENYING MOTION TO SUPPRESS**

BELOT, District Judge.

Before the court are defendant's motion to suppress evidence and the government's response in opposition thereto (Docs. 23 and 25). On December 20, 1993, the court held an evidentiary hearing at which FBI Special Agent Nolan Craig testified. The court is now prepared to rule on defendant's motion.

On June 28, 1993, the First National Bank of Hutchinson, Kansas was robbed by a man who threatened to detonate a bomb. Approximately $165,000 was taken in the robbery. According to an affidavit attached to the Information filed June 30, 1993, a private citizen who learned of the robbery on a police scanner photographed defendant carrying a bulging satchel shortly after the bank robbery. Employees of the bank identified defendant from a photo-lineup and, in addition, authorities recovered a notepad from defendant's motel room which bore an imprint of the note used to threaten bank personnel during the robbery. Other statements in the court file, as well as the testimony of Special Agent Craig, indicate that defendant had been released from the Hutchinson Correctional Facility only a few days prior to the robbery. At the time of his release defendant had a little over $370.

On September 23, 1993, based upon information that defendant would be on an Amtrack train, FBI agents went to the train depot in Albuquerque, New Mexico. The agents had an arrest warrant. They also had information that defendant had a long criminal record and that he threatened to use a bomb in the bank robbery. Although the agents did not have any specific information that defendant would be armed, Special Agent Craig testified that it was standard Bureau procedure to treat as "armed and dangerous" any individual with defendant's criminal history. Prior to going to the depot, the agents talked with an FBI legal advisor who told them that upon arresting defendant, the agents could search defendant and any luggage in his possession.[1]

---

1. The government offered in evidence, without objection, an FBI document identified as the procedure followed by the agents. The document provides, in pertinent part:

Contemporaneous search—the search of a person incidental to an arrest generally should be

The train arrived at the depot and the agents watched defendant disembark. They had photographs of defendant and information that he used various aliases. As defendant stood on the depot platform surrounded by numerous pieces of luggage, the agents approached him and Special Agent Craig placed defendant under arrest. Defendant was handcuffed and patted down. No weapons were found during the pat-down search. Defendant made no efforts to resist arrest or to flee.

While defendant was being arrested, handcuffed and patted down, other FBI agents simultaneously began searching defendant's luggage for weapons. The agents did not request or receive permission to search. The luggage was not locked and bore identification tags using one of defendant's aliases. Special Agent Craig testified that even though defendant was in custody and was not resisting arrest, the agents followed the FBI procedure in searching the luggage for weapons. He explained that agents do not know what can happen when an individual is arrested and just because an individual cooperates does not mean that the individual is not searched. Special Agent Craig stated that he had arrested cooperative individuals who nevertheless were found to be carrying weapons. He repeated that the agents knew that the defendant had a long criminal record and that he was accused of robbing a bank by threatening to use a bomb. He said that the agents did not know what defendant might do.

At some time during the arrest sequence, a commotion unrelated to the arrest occurred on the depot platform and defendant was moved to another platform some distance away. The luggage, however, remained in its original position. At the time defendant was moved, the search of the luggage was about over.[2]

■ The agents searching the luggage found a large amount of money in a green plastic garbage bag and a large amount of jewelry in several velvet and satin bags. No weapons were found in the luggage. When

made at the time and place of arrest by Agents imposing custody.

\* \* \* \* \* \*

A search incidental to arrest may be as thorough as necessary to protect the arresting Agents and the arrestee, preserve any evidence and prevent escape.

\* \* \* \* \* \*

Following a lawful arrest an Agent is entitled in all cases to search the person of the arrestee, the area within his/her immediate control at the time of arrest and.... The search may include any portable personal property in his/her actual possession such as clothing, purses, brief cases, grocery bags, etc. The area of immediate control is any place from which the person arrested may seize a weapon or destructible evidence, and can viewed generally as the space within arms reach and slightly beyond. Items of personal property which fall within this area and are accessible to the arrestee, such as an open desk drawer or an unlocked suitcase, may be searched. However, absent an emergency, inaccessible, non-portable items of personal property, such as a double locked footlocker, or a sealed carton or crate, may not be searched. If there are reasonable grounds to believe they contain evidence, they may be seized, and a search warrant should be thereafter obtained prior to opening.

\* \* \* \* \* \*

Items of personal property removed from a person who has been arrested and is to be incarcerated should be carefully inventoried by Agents prior to being stored for safekeeping. A receipt for such property should be prepared and given to the arrestee. This inventory should include the contents of containers such as purses, shoulder bags, suitcases etc., whether or not the containers are locked or sealed. In the event such containers are locked or sealed great care must be taken to minimize damage to the container or its contents while gaining access. This care taking function must not be construed as an alternative to a search warrant wherever there is probable cause to believe that the evidence or contraband is inside a container. Under those circumstances the container should be secured until a search warrant can be obtained.

2. Defendant's person also was searched during the arrest sequence. Sixteen dollars was found in his front pocket. Also found was a wallet. Special Agent Craig could not recall whether these items were found before or after defendant was moved to the second platform. Defendant has not moved to suppress the items seized during the search of his person.

agents later counted the money, it was over $20,000. When the jewelry was discovered, defendant volunteered that it belonged to a "lady friend" in California.[3]

Following defendant's arrest at the depot, the agents took defendant downtown and made an inventory of the items found on his person. When defendant's billfold was inventoried, it was found to contain a five hundred and a one thousand dollar bill. A day or so later, defendant's luggage was inventoried. Special agent Craig testified that the inventory was not done immediately because of the quantity of items involved.[4]

■ Defendant contends that all evidence seized from his luggage must be suppressed because when the luggage was searched, he was already in custody, presented no threat to the arresting officers and was no longer in a position of immediate control over his luggage. Defendant relies on the following cases: *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Bonitz*, 826 F.2d 954 (10th Cir.1987).

This case involves a presumptively-valid arrest pursuant to a warrant and, indeed, defendant does not challenge the legality of the arrest. In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the court reaffirmed its holding in *Chimel v. California*, that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have been long considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence. *Id.* at 457, 101 S.Ct. at 2862. The court held that when an officer has made a lawful custodial arrest of an occupant of an automobile,

he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and the contents of any containers found within the passenger compartment if the containers are within reach of the person arrested. The court stated:

> Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* at 461, 101 S.Ct. at 2864.

*New York v. Belton* involved the search of containers found in the passenger compartment of an automobile and was followed in *United States v. Cotton*, 751 F.2d 1146 (10th Cir.1985). Nevertheless, the rationale of *Belton* has been applied to searches of luggage within the immediate control of a person arrested at a bus depot. *United States v. Morales*, 923 F.2d 621, 626 (8th Cir.1991) (citing other situations).

Defendant relies primarily on *United States v. Bonitz, supra,* to support his argument that because he did not resist arrest and because he was handcuffed while his luggage was searched, the luggage was not within his immediate control and the agents had no reasonable basis to fear that defendant might somehow retrieve a weapon from the luggage or dispose of any evidence. *Bonitz,* however, is distinguishable. Bonitz was arrested *in his home* pursuant to a warrant. He was immediately handcuffed. *Thereafter,* for the next two and a half hours, the arresting officers searched defendant's *bedroom,* and ultimately found the items which were the subject of the motion to suppress. The majority of the panel (over Judge Baldock's dissent) noted, but did not extensively discuss, the undisputed facts that the seizures were made after the defendant was handcuffed and in custody and that de-

---

**3.** The government did not challenge the defendant's standing to suppress the jewelry. However, in light of defendant's admission that the jewelry did not belong to him, he lacks standing to contest the search of the jewelry. *Wong Sun v.*

*United States,* 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963).

**4.** Partial inventories were admitted as defendant's exhibits 1 and 2.

struction of the evidence was not a reasonable concern.

In this case, the search of defendant's luggage occurred contemporaneously with his arrest. The court accepts and finds credible the testimony of Special Agent Craig that the purpose of the search was for weapons and that the fact that defendant was in custody did not obviate the agents' decision to follow standard Bureau procedures. Given defendant's criminal history and the fact that he was being arrested for a serious felony in which a threat of violence was involved, coupled with the fact that the arrest took place in a public area which could not be easily secured, the court finds that the agents acted reasonably and prudently in searching defendant's luggage for weapons. It is always arguable, with the benefit of 20–20 hindsight, that because a defendant did not resist arrest, and/or because he was handcuffed, and/or because no weapons ultimately were found on his person or in the immediate area, law enforcement officials simply should have secured the area and sought a warrant. However, as the Supreme Court observed in *New York v. Belton*, the authority to search a person incident to a lawful custodial arrest, while based upon the need to disarm and discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found on the person of the suspect. *Id.* 453 U.S. at 461, 101 S.Ct. at 2864.

The Tenth Circuit made a similar observation in *United States v. Cotton, supra* at 1148, when it wrote:

The Supreme Court expresses quite clearly in *Belton* its goal to formulate a workable rule whereby an officer in the field may be able to evaluate the circumstances surrounding a lawful arrest to determine whether seizure of items in the immediate area of the arrestee is called for 453 U.S. at 458–60, 101 S.Ct. at 2863–64. Pursuant to that goal, the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct.

at 2864. This rule specifically includes the contents of any container, open or closed, found within the passenger compartment. *Id.* The rule as thus stated does not require the arresting officer to undergo a detailed analysis, at the time of arrest, of whether the arrestee, handcuffed or not, could reach into the car to seize some item within it, either as a weapon or to destroy evidence, or for some altogether different reason. The facts surrounding each arrest are unique and it is not by any means inconceivable under those various possibilities that an arrestee could gain control of some item within the automobile. The law simply does not require the arresting officer to mentally sift through all these possibilities during an arrest, before deciding whether he may lawfully search within the vehicle.

The evolution of the law regarding the warrantless searches of automobiles has of necessity followed a different path than that of searches incident to lawful arrest in general. The arrestee may have hidden, within the close proximity of the car interior, either weapons or contraband which are easily obtainable. He also has a significantly lessened privacy interest in the objects found within the car than he would in objects found within his home. *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

While the paths pertaining to car searches and other searches are divergent and often difficult to traverse, it would be incongruous to say that an officer need *not* make a detailed analysis regarding whether an arrested suspect could reach into a vehicle, but *must* make such an analysis when, as here, the arrested suspect is standing amidst pieces of luggage. When the search is contemporaneous with a lawful arrest, the ultimate validity of the seizure should not have to depend on discovery of a weapon or upon the occurrence of some untoward incident involving the arrested person.

The government also argues that the search of defendant's luggage was proper as an inventory search. Special Agent Craig specifically testified that the search of defendant's luggage *at the depot* was not an inven-

tory search. This does not end the matter, however, because Special Agent Craig also testified that the inventory which was conducted later was necessary because of the large amount of items contained in defendant's luggage. Defendant does not contest the reasonableness of the agents' decision to inventory the contents of the luggage or of the Bureau's written procedure. He merely complains that he was not given a copy of the written inventory as required by Bureau procedure. This is not sufficient to invalidate the results of the inventory search.

In *United States v. Perea*, 986 F.2d 633 (2nd Cir.1993), the defendant challenged the warrantless seizure of a duffel bag found in the trunk of a taxi cab in which he was a passenger. The duffel bag contained drugs and drug paraphernalia. After lengthy discussion of facts and legal concepts which are not important to the issues under consideration here, the court observed:

> Applicability of other exceptions to the warrant requirement, such as the exceptions for a search incident to arrest and for inventory search, would depend in part on the lawfulness of Perea's arrest.
>
> \* \* \* \* \* \*
>
> Since in the present case the duffel bag was in the trunk of the cab, we see no basis on which it could properly be deemed to have been within Perea's reasonable reach at the time of the stop. And the agents could not make the incident-to-arrest exception applicable simply by placing Perea and the bag near each other after they arrested Perea and opened the trunk. The rationale underlying the exception for inventory searches is different. When a person is arrested in a place other than his home, the arresting officers may "impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area." *Cabbler v. Superintendent, Virginia State Penitentiary*, 528 F.2d 1142, 1146 (4th Cir.1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976); *see also United States v. Grill*, 484 F.2d 990, 990–91 (5th Cir.1973) (officers allowed to

take arrested individual's luggage from airplane in order to protect it), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974); 2 LaFave, *Search and Seizure* § 5.5(b), at 537 (2d ed. 1987) (appropriate for arresting officers to take custody of property that the arrested individual may otherwise be unable to retrieve). After such an arrest and seizure, an inventory search of the property seized is justified by the government's interests in averting any danger the property might pose, in protecting the property from unauthorized interference, and in protecting itself against claims of theft or negligent treatment of the property. *See Colorado v. Bertine*, 479 U.S. 367, 373, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987). Thus, if there has been a lawful arrest and an immediately ensuing search is not justifiable as incident to the arrest, a motion to suppress the proceeds of the immediate search may nonetheless be denied if the contents would inevitably have been discovered in a permissible inventory search. *See United States v. Jenkins*, 876 F.2d [1085] at 1088–89; *United States v. Gorski*, 852 F.2d 692, 696–97 (2d Cir.1988).

> If there was probable cause to arrest Perea without reference to the contents of the bag but not probable cause to search the bag, the agents would have been justified in taking the bag to their headquarters rather than leaving it in Flowers's cab. Accordingly, the contents of the bag may be admissible if the court finds that they would inevitably have been discovered as part of a valid inventory search of the bag subsequent to Perea's lawful arrest.

*Id.* at 643–44.

The court finds that the circumstances of defendant's lawful arrest in a public railway depot necessitated the removal of defendant's luggage to a more secure place and the inventorying of the luggage and its contents as required by Bureau procedure.[5] Obviously, the jewelry and money would have been discovered during the inventory. Moreover, the court especially notes defendant's volun-

---

**5.** Defendant does not contend that the written Bureau procedure contravenes the requirements set forth in *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

teered statement at the time of his arrest that the jewelry found in the luggage belonged to another person. That statement, regardless of whether it was true when made, coupled with the obvious large quantity of jewelry and its potential high value, (not to mention the large quantity of cash found in the luggage) justified a careful inventory of the luggage to protect against a claim by any rightful owner of the jewelry that it was not properly accounted for and protected following defendant's arrest.

In conclusion, the court finds that the cash and jewelry were properly seized at the time of defendant's arrest and, in any event, that they would have been discovered during the later proper inventory of defendant's luggage.

Accordingly, defendant's motion to suppress (Doc. 23) is denied.

IT IS SO ORDERED.