54 F.3d 788
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Joseph PAYNE, Defendant-Appellant.
 No. 94-8073.
 United States Court of Appeals, Tenth Circuit.
 May 4, 1995.
 
 1
 Before KELLY, Circuit Judge, McKAY, Senior Circuit Judge, and COOK, Senior District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 H. DALE COOK, Senior District Judge.
 
 
 4
 Michael Joseph Payne was indicted on a single count of possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1). During the pretrial proceedings, Mr. Payne filed a motion to suppress. The district court conducted an evidentiary hearing and denied his motion. Mr. Payne then entered a conditional plea of guilty, pursuant to Fed.R.Crim.P. 11(a)(2), reserving his right to appellate review of the district court's denial of his motion to suppress. He now appeals from the judgment of conviction. Our jurisdiction arises under 28 U.S.C. 1291, and we affirm.
 
 I.
 
 5
 On May 17, 1993, the Rock Springs, Wyoming Police Department received an anonymous tip that a white male, driving a blue Pontiac Firebird bearing Wyoming license plate number 4-19BK, was traveling from Salt Lake City, Utah, to Rock Springs, with an unspecified amount of cocaine. The information was disseminated to the area patrol officers. Wyoming Highway Patrolmen Tom Kelly and Phillip Archibald were patrolling Interstate 80 headed westbound, in separate vehicles, when Archibald's radar locked on a vehicle traveling eastbound. Archibald recorded the vehicle going 77 miles per hour in a 65 mile per hour speed zone. As the vehicle approached, Archibald observed that it matched the description and license number of the blue Pontiac Firebird suspected of transporting illegal drugs to Rock Springs. Archibald turned his vehicle through the median to head east and radioed Kelly for assistance.
 
 
 6
 Since Kelly's patrol car was equipped with a video camera, Archibald requested that Kelly conduct the traffic stop and video tape the incident. Kelly stopped the vehicle. Within five minutes, Deputy Sheriff Jim Demas arrived at the scene as additional "back-up" assistance.
 
 
 7
 The driver of the Firebird was the defendant, Michael Joseph Payne. His wife, Sheila Rose, was the only passenger. When asked for a driver's license, Payne informed Kelly that his driver's license had been suspended. In response to a request for insurance verification, Payne volunteered that the vehicle was not covered by insurance. The registration certificate showed Sheila Rose as the owner of the vehicle. Payne appeared nervous, his movements were jerky and he was perspiring even though the evening was cool. Kelly returned to his patrol car to radio his dispatcher to confirm Payne's driver's license status. After receiving the confirmation, Payne was issued a warning ticket for the traffic violation, but was placed under arrest for driving under suspension. As Kelly was handcuffing Payne, he informed him that the vehicle could not be driven because it was uninsured, that he was going to impound the vehicle, and inventory its contents prior to releasing it for towing. As Payne was being placed in custody, Archibald approached Ms. Rose who was standing near the passenger compartment of the vehicle and separately conferred with her. When Archibald asked Ms. Rose for consent to search the vehicle, Ms. Rose indicated that she had "no problem" with the officers searching the vehicle. Ms. Rose's consent was overheard and confirmed by Deputy Demas.
 
 
 8
 Archibald told Kelly that Rose had consented to the search of the vehicle. As the troopers proceeded to inventory the Firebird, Ms. Rose, who had not been placed under arrest, asked if she could wait in a patrol car because she was cold. Deputy Demas escorted Rose to his vehicle and he remained there with her. During the inventory, Kelly located a plastic bag containing cocaine under the slipcover of the passenger seat. Ms. Rose was then arrested and taken into custody. Both Payne and Rose were transported to the Sweetwater County Jail and booked. During a subsequent interview, Ms. Rose gave written consent for the search of their residence. On May 18, 1993, during the search of the residence, a triple-beam scale covered with cocaine and a box of sandwich baggies were discovered in the master bedroom. A subsequent consensual search of the Firebird failed to produce additional contraband. A total of 136.6 grams of cocaine was seized from the Firebird.
 
 II.
 
 9
 Mr. Payne argues on appeal that the district court erred in denying his motion to suppress evidence seized following the traffic stop, challenging the district court's finding that: (a) the search of the vehicle was consensual; and (b) incident to his arrest.
 
 
 10
 At the suppression hearing, the district court received direct evidence from Trooper Archibald and Deputy Demas that Ms. Rose, as registered owner of the vehicle, readily consented to the search request. Trooper Kelly testified that Archibald contemporaneously notified Kelly of Ms. Rose's consent. Mr. Payne argues on appeal that the officers' uncontroverted sworn testimony is not credible because neither Archibald or Demas mentioned Ms. Rose's consent in their investigative reports nor did Trooper Kelly include her statement of consent in his affidavit supporting the subsequent search of Payne's residence.
 
 
 11
 Additionally Mr. Payne argues that the search was too remote in time and place to be a valid search incident to his arrest, because he was handcuffed and removed from the proximity of the vehicle and locked in a patrol car prior to the search.
 
 
 12
 Our consideration of the district court's factual findings on a motion to suppress is subject to the clearly erroneous standard of review. United States v. Werking, 915 F.2d 1404, 1406 (10th Cir.1990). The reasonableness of the search and seizure, under the Fourth Amendment, however, is a question of law that we review de novo. United States v. Walker, 933 F.2d 812, 815 (10th Cir.1991), cert. denied 112 S.Ct. 1168 (1992).
 
 III.
 
 13
 "[A] search may be conducted without probable cause and without a warrant if the search is conducted pursuant to voluntary consent." United States v. Guglielmo, 834 F.2d 866, 868 (10th Cir.1987). Where consent is an issue, the government must present "clear and positive testimony that consent was unequivocal and specific and freely given" and that the consent was given "without duress or coercion, express or implied." United States v. Butler, 966 F.2d 559, 562 (10th Cir.1992).
 
 
 14
 As a general rule, we have found consent to search a vehicle voluntary where there is no evidence of coercion, the testimony establishes that consent was freely given and the occupants watched without voicing an objection as the officers searched the vehicle. See, e.g., United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986). In this instance, Mr. Payne does not challenge the nature of the consent, but the credibility of the evidence relied on by the district court in finding that consent was given by Ms. Rose. According to Trooper Archibald's testimony and the testimony of two corroborating officers, Archibald asked Ms. Rose for permission to search the vehicle and Ms. Rose gave that permission. The district court found that the officers' testimony is uncontroverted because neither Payne nor Rose offered testimony to the contrary. Additionally, Deputy Demas testified that during the search of the vehicle, Ms. Rose sat quietly with him in his patrol car without objecting to the search. We have previously held valid a search as consensual in the absence of any contrary evidence. See, e.g. United States v. McKneely, 6 F.3d 1447, 1452-3 (10th Cir.1993). Thus, given the lack of evidence of coercion, direct testimony of Trooper Archibald that he received consent, substantiating testimony of Trooper Kelly and Deputy Demas that consent was obtained, and the absence of any testimony to the contrary, we conclude that the district court's finding that the search was consensual is not clearly erroneous.
 
 IV.
 
 15
 A warrantless search of an arrested person and the immediate surrounding area may be conducted contemporaneously with the arrest. New York v. Belton, 453 U.S. 454, 457 (1981). Mr. Payne interprets the Belton decision to define "contemporaneous" to mean, in essence, simultaneous with the arrest. Specifically, in relying on United States v. Lugo, 978 F.2d 631 (10th Cir.1992), Mr. Payne argues that once he was handcuffed and locked inside the patrol car, he had been "removed from the scene" by the arresting officer and posed no further threat of reaching inside the vehicle to grab a weapon or to destroy evidence. Relying on Chimel v. California, 395 U.S. 752, 764, we stated in Lugo, "[A] warrantless search incident to arrest is not valid if it is 'remote in time or place from the arrest' (citations omitted), such that 'no exigency exits.' " Lugo, 978 F.2d at 635. Thus, Mr. Payne argues that once he was locked in a patrol car, the subsequent search of the vehicle was remote in time and place. We have applied the plain meaning of the word "contemporaneous" and have previously rejected the argument that the search must be simultaneous to the arrest. In United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir.1985) we held that, "[W]here an officer has made a lawful arrest of a suspect in an automobile, he may seize articles found within the interior of the automobile as part of a search incident to a lawful arrest, even where the arrestee is outside of the vehicle and handcuffed." United States v. Lugo is distinguishable in that the officer had removed Mr. Lugo from the scene of the search of his truck, and he was in route to Green River Jail at the time his truck was being searched. Id. at 633. Moreover, the search was not remote in time. The district court found from review of the video tape (which contained a built-in clock) that after Mr. Payne was arrested he was placed in the patrol car and his vehicle was immediately searched. We have held that officers may validly search a vehicle in which the arrestee was a recent occupant as a search incident to an arrest. See, United States v. Franco, 981 F.2d 470, 473 (10th Cir.1992). "Such a search is permissible notwithstanding the fact that the arrestee is out of the automobile and under the control of the officer." Id. The search of the vehicle, conducted contemporaneously with Payne's lawful arrest, was reasonable.
 
 
 16
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470