**UNITED STATES of America, Plaintiff,**

v.

**Ervan Ronnell HERRING, Defendant.**

**No. CR 98–317–JO.**

United States District Court, D. Oregon.

Feb. 10, 1999.

**1254**

Ellen C. Pitcher, Federal Public Defender, Portland, OR, for Ervan Ronnell Herring.

Fredric N. Weinhouse, U.S. Attorneys Office, Portland, OR, for U.S. Attorneys.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

On February 25, 1998, police officers William Goff and Robert Bustamante were assigned to the City of Portland Gang Enforcement Team, African–American detail. The primary mission of that detail is to curtail African–American gang criminal activity. At about 8:55 p.m., on that date, Goff and Bustamante, while in uniform and in their patrol car, were surveilling a car because of a domestic violence incident that occurred earlier that evening and suspected gang-related shootings. After following the car for about 30 blocks, they observed a driver of the automobile make an illegal lane change. The officers directed its driver to pull over to the side of the road and stop. There were three African–American men in the car. As the car pulled to the curb and stopped, the officers observed defendant Ervan Ronnell Herring, who was in the front passenger seat, toss a cigarette out of the car window, in violation of ORS 164.805 (offensive littering). Under Oregon law, offensive littering is a Class C misdemeanor, for which a custodial arrest is authorized by ORS 133.310. After defendant, the driver and the other occupants were removed from the car,[1] defendant was arrested for offensive littering, searched,[2] handcuffed and placed in the rear seat of the police patrol car, which was about 30 to 40 feet away. Within three to five minutes of defendant's arrest and while the driver and the other passenger were on the side of the sidewalk being accompanied by other officers,[3] officer Goff searched the car and found a handgun (a .38 caliber revolver) under the passenger seat where defendant had been sitting. After he was advised of his *Miranda* rights, defendant denied the handgun was his and made statements concerning the earlier domestic violence incident. The car was towed to the Northwest Precinct, where it was subjected to a police inventory.

---

**1.** See *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (a police officer may, as a matter of course, order the driver of a lawfully stopped car to exit the vehicle); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), (an officer's prerogative to order people out of vehicles during traffic stops extends to passengers as well as to drivers).

**2.** The warrantless search of defendant's person did not disclose any weapons.

**3.** The driver and the other passenger in the automobile were taken into custody and transported to the Northwest Precinct for further investigation. The driver was cited for illegal lane change and release. The other passenger was held in custody on a matter unrelated to the traffic stop.

Defendant was subsequently indicted for certain crimes connected with the handgun found in the warrantless search of the car.

Before this Court, defendant moved that the handgun the police seized from the car in which he was a passenger be suppressed on the ground that it had been acquired as a result of a warrantless search and seizure that violated the Fourth Amendment. Defendant also moved to suppress statements made by defendant to the officers following the traffic stop on the ground the statements were the "fruit of the poisonous tree." Following a pre-trial hearing, this Court denied defendant's motion to suppress and stated the bases for its ruling. After reflection, this Court believes a further discussion of the issues raised at the suppression hearing and this Court's ruling on defendant's motion to suppress is warranted.

Under the Fourth Amendment warrant requirement rule, a search or seizure made without a warrant is "per se unreasonable, subject to series of exceptions". *Schneckloth v. Bustamante,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In this case, the government, seeks to justify the search of the automobile under the "search incident to a lawful custodial arrest" exception to the warrant requirement rule,[4] relying primarily upon *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

In *New York v. Belton,* the issue before the Supreme Court was: what is the permissible scope of a warrantless search of a vehicle "incident" to a lawful custodial arrest of an occupant of that vehicle? Stating the issue differently, when the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?

In *Belton,* the Supreme Court adopted a "bright-line" rule: when a policeman has made a lawful custodial arrest of an occupant in an automobile, he may, contemporaneously search incident to that arrest, the interior of the passenger compartment of that automobile and any container found therein, whether it is open or closed, locked or unlocked, even absent probable cause to believe contraband or evidence of crime will be found inside the container[5].

Under *Belton,* the search of a car and the contents of containers inside is permissible under the search-incident doctrine even if the car's occupants have been removed from the car, so long as (1) one of its occupants have been subject to a lawful custodial arrest, (2) the search is of the interior of the passenger compartment of that car, and (3) the search is contemporaneous with the arrest.

■ For reasons that follow, this Court finds each of those circumstances exist in this case. First, defendant does not dispute the validity of the traffic stop of the car, in which he was riding, for illegal lane change, an offense which occurred in Goff's and Bustamante' presence.[6] The littering offense, which was also committed by defendant in the officers' presence, is an offense for which a custodial arrest is authorized under Oregon statutory law. The handgun, which defendant seeks to suppress, was found in the search under the front passenger seat, which is an area clearly within the interior of the passenger compartment of the car[7]. The

---

4. Although the Government's Response To Defendant's Motion To Suppress Evidence stated that the government would justify the warrantless search of the automobile under the inventory exception to the warrant requirement rule, the government abandoned that claim at the suppression hearing.

5. "Container" here denotes any object capable of holding another object. It thus includes "closed and open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing and the like." *Belton,* 453 U.S. at 461 n. 4, 101 S.Ct. 2860.

6. In the Memorandum In Support Of Defendant's Motion To Suppress Evidence, page 5, defendant states: "According to Officer Goff's report, the vehicle was pulled over simply because the driver began to signal for a lane change after he had begun the lane change, rather than prior, as required under the Oregon Vehicle Code. Although this probably squeaks by as justification for the [traffic] stop, it does so just barely."

7. *See United States v. Russell,* 670 F.2d 323, 326 (C.A.D.C.1982) ("for purposes of the *Belton* rule, [passenger compartment] is properly read 'as including all space reachable without exiting the vehicle' * * * (distinguishing however areas that

search of the car, which was conducted within three to five minutes after defendant's arrest, was sufficiently close in time to defendant's arrest to qualify as contemporaneous. *See United States v. Moorehead,* 57 F.3d 875, 877, 878 (9th Cir.1995) (search held contemporaneous to the arrest under similar facts). In contrast, *see United States v. Vasey,* 834 F.2d 782, 785–788 (9th Cir.1987) (a 30– to 45–minute delay between the arrest and search of the passenger compartment of the automobile was too long after the arrest to qualify as contemporaneous).

■ Moreover, the search of a car incident to the arrest of an occupant is valid, even when the arrestee is handcuffed and removed from the car at the time of the search, as defendant was in this case. *See United States v. Howard,* 758 F.2d 1318, 1319 (9th Cir.1985); *United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985).

Defendant asserts that the warrantless search of the car cannot be justified, because there was no evidence of the crime of offensive littering which could reasonably be found in the search of the automobile. Defendant is mistaken. *Belton* makes it clear that, for Fourth Amendment scrutiny, the constitutionality of a search of the passenger compartment of an automobile incident to the custodial arrest of an occupant in the automobile does not depend on whether there is any indication that the person arrested possesses weapons, whether there is evidence probative of crime on the person of the arrestee, or whether evidence of the crime for which the occupant was arrested could reasonably be found in the search of the automobile. In other words, under *Belton's* bright-line rule, the police may conduct a warrantless search of the passenger compartment of an automobile without any articulable suspicion that contraband or evidence of crime will be found therein. As the dissenters in *Belton* pointed out, the decision "adopts a fiction—that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car". 453 U.S. at 466, 101 S.Ct. 2860 (Brennan, J., dissenting).

■ Defendant contends that the Supreme Court's recent decision in *Knowles v. Iowa,* —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), not *Belton,* is controlling in this case. Defendant is again mistaken. In *Knowles,* the defendant was stopped for speeding, which is an arrestable offense in Iowa. The officer decided to issue a citation for the speeding, although under Iowa law he might have arrested him. The officer then conducted a full search of the automobile without either the defendant's consent or probable cause. Under the driver's seat he found a bag of marijuana and a "pot pipe." Defendant was then arrested and charged with violation of state laws dealing with controlled substances. Before trial, the defendant moved to suppress the evidence so obtained. The trial court denied the motion and found the defendant guilty, based on an Iowa statute giving officers issuing citations the same authority to search drivers and vehicles as they would have if they made custodial arrests. The Iowa Supreme Court upheld the constitutionality of the warrantless search under a bright-line "search incident to citation" exception to the Fourth Amendment's warrant requirement, reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest. The Supreme Court disagreed. Chief Justice Rehnquist, writing for the entire court, concluded that the "search incident to arrest" exception to the Fourth Amendment warrant's requirement does not allow a law enforcement officer to search a vehicle when the officer has probable cause to arrest the driver but opts to issue a citation for the offense instead. The Court made it clear that it is the arrest itself, not the underlying grounds, that supports the search-incident doctrine. The issuance of a citation in lieu of a custodial arrest for the traffic offense voids the officer's authority to search the passenger compartment of the car. The Court stated that the underlying rationales—protective (officer safety) and evidentiary (the need to discover and preserve evidence)—that makes a warrantless search incident to arrest "reasonable" under the Fourth Amendment are missing or

would require 'some dismantling of the vehicle,' for example door panel interiors, and other

places to which there is 'virtually no chance the arrestee could have acquired access')."

less compelling in the context of the issuance of a citation for a traffic offense. In rejecting a bright-line "search incident to citation" exception to the Fourth Amendment warrant requirement, the Supreme Court reaffirmed the bright-line rule it had adopted in *Belton,* stating: "officers [may] * * * conduct a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest, *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)." *Knowles,* 119 S.Ct. at 488.

In this case, offensive littering is an arrestable offense in Oregon. Although officer Goff could have opted to issue a citation for that offense, he did not do so. Instead, he took defendant into custody so that he may be held to answer for the offense of offensive littering. Thus, the custodial arrest of defendant's person for offensive littering was made under authorization of Oregon statutory law, *i.e.,* by an officer legally empowered to make arrests under the circumstances for the sort of offense in question. Under *Belton,* as previously stated, the custodial arrest of defendant's person allowed officer Goff to conduct a full search of the passenger compartment of the car in which defendant was an occupant.

It cannot be disputed, that, although limited to custodial arrests, the "bright-line" rule adopted in *Belton* does provide an incentive to the police to arrest a car's occupants for minor "custodial" offenses whenever they want to search the car. At the suppression hearing, defendant offered evidence that police records show that in 1998, over 90% of the 228 individuals charged with offensive littering in the City of Portland were either issued traffic citations in lieu of arrest or given nontraffic citations. Defendant contends that officers Goff and Bustamante had an ulterior motive in stopping the car in which defendant was a passenger and in

making a custodial arrest of defendant, namely, to investigate some crime for which there were insufficient facts to justify making the traffic stop or a custodial arrest.

There are facts in the record which support defendant's contention that Goff and Bustamante had an ulterior motive in stopping the car and in arresting defendant. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), addressed the issue of so-called "pretextual stops." The Court interpreted the Fourth Amendment as calling for a purely objective test for assessing the reasonableness of vehicle stops. The court held that, with certain exceptions not applicable here,[8] the officers' motivations are not relevant to the officers' conduct under the Fourth Amendment.

In *Whren,* plainclothes officers driving an unmarked car in a "high drug area" saw the driver of a truck look down into the lap of his passenger as they passed. The truck then remained stopped at an intersection for more than 20 seconds. When officers made a U-turn to head back toward the truck, it suddenly turned right, without signaling, and sped off at an "unreasonable" speed. The officers stopped the truck and subsequently observed drugs in Whren's hands. The defendants admitted that they had violated traffic laws, but claimed that the officers stopped them based on an inarticulable hunch that they possessed drugs and thus violated the Fourth Amendment. In a unanimous opinion written by Justice Scalia, the Supreme Court rejected this argument. The Court concluded that the Fourth Amendment's emphasis on reasonableness means that "subjective intention play no role in ordinary, probable cause Fourth Amendment analysis." 517 U.S. at 813, 116 S.Ct. 1769. The defendant had argued that, at the least, a determination should be made as to whether the police actions in the case

---

**8.** Although *Whren* held that ulterior motives will not invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of the law has occurred, it suggested that ulterior motives will invalidate an inventory or an administrative inspection conducted in bad faith or conducted for the sole purposes of investigation. 517 U.S. at 811, 116 S.Ct. 1769. In *Whren,* the Court noted that its decisions on officer's authority to conduct inventories and administrative inspection include language indicating "pretextual" use of that authority would be improper. The Court observed, however, the inventory and administrative inspection doctrines are for situations in which there is no probable cause. "[T]he exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes." *Id.* at 811, 116 S.Ct. 1769.

deviated from normal police practices (for instance, D.C. police regulations permit plainclothes offices in unmarked vehicles to enforce traffic laws only in emergency situations). But the Court held that the objective approach means that even an inquiry into what a "reasonable police officer" would have done under the circumstances is not required, because ultimately this inquiry too is an attempt to ascertain the subjective motivations of the officer. Justice Scalia also noted the difficulty a contrary result would create for the courts: either they would have to ascertain the subjective intentions of the officer or determine the reaction of a hypothetical officer which, in the absence of regulations, would often be pure speculation.

In *Whren*, the defendants had argued that, given the wide discretion the ubiquity of traffic violations gives the police, the *collective* harm, in terms of confusion and alarm, that is produced by allowing plainclothes officers to stop cars for minor traffic violations outweighs the government interest in traffic safety. To this the Court responded:

> "We are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement. And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement." 517 U.S. at 818, 116 S.Ct. 1769.

Thus, *Whren* held that a temporary detention of a motorist that is supported by probable cause to believe that the motorist has committed a civil traffic violation is reasonable under the Fourth Amendment regardless of the actual motivations of the law enforcement officer in making the stop, and regardless of whether reasonable officers in the same circumstances would have made the stop in absence of some other law enforcement purpose. *Whren*

makes it clear that the constitutional reasonableness of traffic stops under the Fourth Amendment does not depend on the actual motivations of the individual officers involved. *See also Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (under *Whren*, a law enforcement officer's subjective motivation in asking a lawfully stopped motorist to exit the vehicle does not affect the lawfulness of the detention).

The Ninth Circuit Court of Appeals has held that arrests as well as stops are governed by the *Whren* standard. *United States v. Hudson*, 100 F.3d 1409, 1415 (9th Cir.1996).

Accordingly, the fact that in 1998, over 90% of the 228 individuals charged with offensive littering in the City of Portland were either issued traffic citations in lieu of arrest or given non-traffic citations, does not affect the constitutional reasonableness of defendant's arrest for offensive littering, which, as previously stated is an arrestable offense under Oregon law. The officer's actual motivations in making the custodial arrest of defendant in lieu of issuing a traffic citation are simply not relevant to the officer's conduct under the Fourth Amendment. The officer's conduct was objectively justifiable under Fourth Amendment jurisprudence, subjective motivations notwithstanding.

There is another reason for denying defendant's motion to suppress. At the suppression hearing, the issue whether defendant has "standing"[9] to challenge the warrantless search of the car and the seizure of the handgun was raised and briefly argued. This Court did not resolve that issue. It does so now.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) and, most recently, under *Minnesota v. Carter*, —— U.S. ——, 119 S.Ct. 469, 142 L.Ed.2d 373, the Court held that defendant—the proponent of the motion to suppress—must establish that his own (not someone else's) Fourth Amendment

9. The *Rakas* court asked "whether it serves any useful analytical purpose to consider [the principle that Fourth Amendment rights are personal rights] a matter of standing, distinct from the merits of a defendant of a defendant's Fourth Amendment claim." The Court, per Rehnquist, J., then proceeded to answer that inquiry in the negative, concluding that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than any theoretically separate, but invariably intertwined concept of standing". 439 U.S. at 427–29, 99 S.Ct. 995.

rights were violated by the search of the car and the seizure of the handgun which he seeks to challenge. The Supreme Court's cases dealing with the issue of "standing" do not support the conclusion that, on the record before this Court, defendant is the proper party to assert the claim of Fourth Amendment illegality and to seek the remedy of exclusion, as he does.

The only evidence in the record offered by defendant to support his claim of "standing" is defendant's attorney's avowal to this Court, and defendant's agreement with the avowal, that

> "If [defendant] were called to testify, he would testify that when he rides in a vehicle with possessions, usually he puts them on the seat, but if all the seats are occupied, then it would be his custom to put them on the floor of the vehicle. And that it would be his understanding that anything that he carried with him in a vehicle, in particular, around his person, would be secure, and that no one would be likely to search that object. That he would, therefore, have a reasonable expectation of privacy, in the items that he carried about his person and in a vehicle."

Defendant makes no claim that he owned the car and he denies the handgun was his. In *Rakas v. Illinois, supra,* the Court held that the Fourth Amendment does not protect the privacy of a person who is merely "legitimately on the premises" where a search occurs; the defendants, who were passengers in the car and who asserted neither a property nor a possessory interest in the car searched nor an interest in the property seized (*i.e.,* the rifle and shells), and who failed to show that they had any legitimate expectation of privacy in the area search (*i.e.,* glove compartment or area under the seat of the car), had suffered no invasion of their Fourth Amendment rights and, therefore, were not entitled to challenge the search of those areas.

*Minnesota v. Carter,* —— U.S. ——, 119 S.Ct. 469, 142 L.Ed.2d 373, held that individuals paying short-term visit to home for commercial purpose do not have reasonable expectation of privacy, protected by Fourth Amendment, inside someone else's home. In reaching that conclusion, the Court said that *"Rakas ... held that automobile passengers could not assert the protection of the Fourth Amendment against the seizure of incriminating evidence from a vehicle where they owned neither the vehicle nor the evidence."* (Emphasis added.) 119 S.Ct. at 472. The Court said that "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable"; *i.e.,* one which has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted in society. *Id.;* 119 S.Ct. at 472.[10]

■ For the foregoing reasons, defendant has not established that his own Fourth Amendment rights were violated by the search of the car or seizure of the handgun which he seeks to challenge in this case.[11]

10. *See also Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (ownership of property does not automatically entitle a defendant to challenge a government search or seizure of that property while it is in the custody of a third party; an individual has the right to challenge such a search or seizure only if the government, while conducting the third-party search infringed on some legitimate expectation of privacy to which the defendant was entitled; a drug defendant has no right to challenge the search of a friend's purse even though he has placed some of his drugs there); *United States v. Padilla,* 508 U.S. 77, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993) (mere fact that persons might have some control over the searched area does not automatically mean they have standing; Fourth Amendment standing exists only for persons whose own rights have been violated, *i.e.,* wheth-

er each defendant "had either a property interest protected by the Fourth Amendment that was interfered with by the stop of the automobile ..., or a reasonable expectation of privacy that was invaded by the search thereof.").

11. Defendant has standing to object to the stopping of the car in which he was a passenger. Six members of the Court in *Rakas* indicated that the passenger does have standing to object to the police conduct which intrudes upon his Fourth Amendment protection against unreasonable seizure of his person. 439 U.S. at 150, 99 S.Ct. 421 (Powell, J ., concurring opinion, joined by the Chief Justice), and 439 U.S. at 156, 99 S.Ct. 421 (White, J., dissenting opinion, joined by Brennan, Marshall and Stevens, JJ.). But, as previously stated, defendant does not dispute the validity of the traffic stop of the car in which he was an occupant.

The traffic stop, the search of the car, the seizure of the handgun, and the seizure (the custodial arrest) of defendant's person do not, as he asserts, violate defendant's Fourth Amendment rights. Nor are the statements made by defendant subsequent to those events the "fruits of a poisonous tree."

In sum, for the foregoing reasons, defendant's motion to suppress hereby is denied.